## CIRCUIT COURT OF LOUDOUN COUNTY

William E. Buland

v.

Jane H. Buland

### Case No. (Chancery) 11492

By JUDGE JAMES H. CHAMBLIN

October 9, 1991

On September 30, 1991, the Court heard argument as to reconsideration of the prior ruling refusing to proceed on the father's motion to reduce child support because he is in arrears in his court-ordered child support obligation.

For the reasons hereinafter set forth, I am of the opinion that:

(1) the decision to proceed with a requested modification of any decree in a divorce case when the party requesting the modification is not in full compliance of all prior decrees lies within the sound discretion of the trial court;

(2) that an arrearage, which is noncompliance with a court order, does not automatically prevent the trial court from proceeding;

(3) that the child support guidelines statutes require the trial court upon the request of either parent to set child support even if the payor parent is not in compliance with a prior court order; and

(4) that if the payor parent is found by the trial court to be in arrears, then upon the request of the payee parent, the trial court will make such decision as to the arrearage as is permitted by law at the same time as it rules on the petition for reduction.

The Supreme Court of Virginia has addressed the issue of whether a party in a divorce case can request modification of a prior order or seek affirmative relief when he or she is not in compliance with prior orders of the court. In *Gloth v. Gloth*, 154 Va. 511 (1930), the trial court erred in dismissing the husband's bill of complaint for divorce because he had not paid child support per an interlocutory decree in the cause. The failure to pay was characterized as contempt (at the least, it was noncompliance), but dismissal of the bill was not found to be a proper punishment. The Supreme Court remanded with the admonition that the trial court may refuse to proceed until the husband purged himself of his contempt.

In *Hulcher v. Hulcher*, 177 Va. 12 (1941), the Supreme Court found no error in the trial court proceeding to hear and grant a petition for reduction in alimony even though the husband was in arrears. The wife had never sought contempt proceedings against the husband even though he had been paying $10.00 less per month than the court-ordered alimony for almost seven years before he filed his petition. The wife's silence appeared to be an acquiescence in the lower payments and was a circumstance to be considered by the court in deciding to proceed on the husband's reduction petition. In *Davis v. Davis*, 206 Va. 381 (1965), the trial court erred in denying a husband a divorce because he had not complied with an interlocutory child support order. The cause was remanded with language that it would be proper to refuse to proceed until the husband satisfactorily complied with the interlocutory decree "or with such further decree with regard to child support and counsel fees as the chancellor may see fit to enter." 206 Va. at 387.

The decision to proceed on a requested modification of a prior decree or a request for affirmative relief

by a noncompliant party rests within the sound discretion of the trial court. Each case must be judged on its own particular circumstances.

*Gloth, Hulcher*, and *Davis* were decided before Section 20-108.1 and 20-108.2 were enacted. Given the legislative history and reasons for their enactment, *see Farley v. Liskey*, 12 Va. App. 1, 4 (1991), and *Richardson v. Richardson*, 12 Va. App. 18, 20 (1991), a trial court upon the request of any parent must determine child support in the manner provided by the statutes as interpreted by appellate court decisions. Congress established the child support guidelines to assure that both the child's needs *and the parent's ability to pay* are considered in order to decrease disparity in awards. Denying a party the ability to proceed because he or she is in arrears would subvert Congress' goal. If the parties were together, then they and the children would have to endure any changes in the parties' income. The General Assembly chose to adopt the income shares model for the guidelines. It is the continuing duty of both parents to support their children consistent with the needs of the children and the parents' ability to pay.

The significance of the guidelines and its impact on existing child support modification law is especially apparent in the holdings of the Court of Appeals in *Milligan v. Milligan*, 12 Va. App. 982 (1991), and *Watkinson v. Henley*, 13 Va. App. --- (1991). The guidelines themselves can supply a reason to review a prior decree. The change of circumstance rule established long before the enactment of the guidelines can be satisfied by a mere showing that an application of guidelines results in a significant variance from the prior decree. Just as the Court of Appeals pointed out in *Milligan* that change of circumstances language is absent from § 20-108.2, language concerning a noncompliant party is also absent.

The payee parents argue that the payor parents should not be allowed to come into court with "unclean hands" because they are in arrears in their child support obligations. The "clean hands doctrine" is one of many equitable principles and maxims that apply to suits in equity. Although they are brought on the chancery side of the court under § 20-96, jurisdiction in the circuit courts of divorce cases comes entirely by statute through Article IV, Section 14, of the Virginia Constitution which authorizes the

General Assembly to confer upon the Courts the power to grant divorces. *See White v. White*, 181 Va. 162 (1943). Jurisdiction for divorce cases is a limited statutory jurisdiction. *McCotter v. Carle*, 149 Va. 584, 593 (1927). Divorce suits are not suits in equity.

Even though the Court of Appeals says in *Westbrook v. Westbrook*, 5 Va. App. 446, 456 (1988), that it is an "unresolved question" whether in Virginia equitable maxims apply to divorce cases, the Supreme Court in *Brown v. Kittle*, 225 Va. 451 (1983), found that the invocation of the equitable principle of "unclean hands" adversely affected the best interests of the child in a custody case. *Brown* recognized that the withholding of equitable relief to punish a wrongdoer has been approved in other cases involving family law (e.g., *Davis* and *Gloth*) but not where the rights of children were prejudiced by the result.

There may be no prejudice to the children if the noncompliant payor parent is not allowed to proceed because a support order is in place, but also there is no prejudice if a child support award is determined by the guidelines because it is presumed that the amount set by the guidelines is correct unless rebutted after consideration of the statutory factors by a just and appropriate amount. It might be argued that the rights of the children are prejudiced if support arrearages are not addressed when the payor parent requests a reduction; however, their rights can be equally prejudiced if the custodial parent neglects to bring the arrearage to the attention of the court. It would be an exceedingly rare case where the custodial parent decided not to do anything about an arrearage when the noncustodial parent seeks a reduction.

The rationale of *Gloth*, *Hulcher*, and *Davis* do not come under the "such other factors" factor set out in Section 20-108.1(B)(16). "Equities for the parents and children" does not refer to equitable maxims or principles. If the legislature had intended for such maxims or principles to apply, then it would have placed them in the factors. The word "equities" is used in § 20-107.3, but it does not mean that equitable maxims apply in equitable distribution cases. *Westbrook*, 5 Va. App. at 457. They should not apply in a purely statutory support proceeding.

Child support has never been an area of equitable jurisdiction.

Whether a payor parent is in willful contempt or merely noncompliant is not a determinative issue. If he or she is in willful contempt, then he or she has the ability to pay and a reduction would not be granted. Although the presumptive amount based on the parents' incomes may be less than the prior court-ordered amount, the financial resources of the payor parent (which shows that payment can be made, and, therefore, willful contempt), considered under § 20-108.1(B)(11), would warrant increasing the presumptive amount by a just and appropriate amount to the level of the prior court-ordered support.

The argument that adopting a view as expressed herein will open a floodgate is not frivolous. The floodgates could very well be opened. However, requests for modification will never be granted for a minor modification. The Court of Appeals has used the phrase "significant variance between the guidelines and the court's prior decree." *Milligan v. Milligan*, 12 Va. App. 982, 988 (1991). Sections 20-108.1 and 20-108.2 make the child support award process much more mechanical than it was before. Therefore, it should lead to more settlements than litigation. Finally, the courts can prevent abuses and protect litigants from unnecessary mental anguish and expense by applying Section 8.01-271.1.

October 10, 1991

On August 1, 1991, this cause came on for hearing on the Motion for Reconsideration in Child Support (the "Motion") filed herein on June 21, 1991, by Mr. Buland. After hearing the evidence and argument of counsel, this Court refused to proceed on the Motion because Mr. Buland was not in compliance with decrees of this court entered December 29, 1988, September 28, 1990, and November 28, 1990.

After hearing the argument of counsel on September 30, 1991, this Court reversed its decision for the reasons set forth in the opinion letter of October 9, 1991. This Court will proceed to rule on the Motion.

For the reasons hereinafter set forth, the Motion

is granted. Child support is reduced to $357.50 per month per child effective August 1, 1991.

### Determination of Presumptive
### Amount under Section 20-108.2

Mrs. Buland's gross income is $1,058.16 per month. Defendant's Exhibit No. 2.

Mr. Buland's gross income is $3,418.58 per month based on an annual gross salary of $41,023.00. Plaintiff's Exhibit No. 1.

Mr. Buland has not paid spousal support, even though he is under a court order to do so, since November, 1990. Therefore, spousal support will not be considered under Section 20-108.2(C).

The monthly basic child support obligation for the two children is $952.00 (extrapolated) based upon a combined monthly available income of $4,476.14 under § 20-108.2(B).

There are no extraordinary medical or dental expenses under § 20-108.2(D) and no work-related child care expenses under § 20-108.2(F). Mr. Buland pays for health care insurance coverage for the children in the amount of $52.14 per month under § 20-108.2(E).

Therefore, under § 20-108.2, the presumptive amount is $1,004.14, of which Mr. Buland's percent obligation (at 76.36%) is $766.76 or $383.38 per child per month.

### Application of Factors
### under Section 20-108.1

Under § 20-108.1, the rebuttable presumption that the amount of a child support award which would result from the application of the guidelines in § 20-108.2 is the correct amount to be awarded may be rebutted by written findings that the application of the guidelines would be unjust or inappropriate in a particular case as determined by relevant evidence pertaining to the factors set forth in § 20-108.1(B). Under *Farley v. Liskey*, 12 Va. App. 1 (1991), and *Richardson v. Richardson*, 12 Va. App. 18 (1991), the amount finally awarded must be determined by "adding or subtracting a just and appropriate amount from the presumptive amount." *Richardson*, 12 Va. App. at 19. Given this language, the facts of *Farley* and *Richardson*, as well as

subsequent Court of Appeal's cases concerning the guidelines, and the reasons for the establishment of the guidelines, see Richardson, 12 Va. App. at 20, I am of the opinion that there must be evidence to support or quantify the amount of such addition or subtraction from the presumptive amount.

There may be much evidence in a given case relevant to the factors of § 20-108.1(B), but if there is no evidence of a definite amount attributable to a given factor, then there is no "just and appropriate amount" that can be added or subtracted. Allowing the court to assign an amount to a given factor based on the subjective feelings or views of the judge would be contrary to the reasons for the guidelines. It would revert to the pre-guidelines days of alleged widespread disparities in child support awards.

In this case, many factors under § 20-108.1(B) are relevant and can be considered. They are listed below. The appropriate factor response is listed after each.

1. Mr. Buland received a reduction in child support in September, 1990, from $1,500.00 per month (based child support under the parties' agreement incorporated by the decree entered December 29, 1988) to $1,320.00 per month for the reasons set forth in the opinion letter of August 17, 1990. Section 20-108.2(B)(11) and (16).

2. Mr. Buland must still pay the cost of living adjustment in child support which he agreed to in the parties' agreement. See letter opinion dated November 7, 1990, and decree entered November 28, 1990. This decree was never appealed. Therefore, it is final and the law of this case. Section 20-108.2(B)(11) and (16).

3. Mr. Buland pays $1,582.62 per month to Mrs. Buland under a payroll deduction order entered April 23, 1991, effective June 1, 1991. He is not asking for a change in this order. This amount is more than his present child support obligation. Section 20-108.2(B)(11) and (16).

4. Mr. Buland is in arrears in spousal support as of August 1, 1991, in the amount of $8,000.00 and $8,946.28 as to child support. His current child support obligation based on the September 28, 1990, decree, and the cost of living provision is $1,414.50 per month. It is due

to be adjusted again on October 31, 1991, under the parties' agreement. Section 20-108.2(B)(11) and (16).

5. Mrs. Buland has had to incur attorney fees as a result of Mr. Buland's nonpayment of support and his motions for reduction in child support. However, there is nothing before the court as to amount of such fees. Section 20-108.2(B)(11) and (16).

6. Mr. Buland receives the benefit of the tax exemption for each child under the parties' agreement. Section 20-108.2(B)(15).

7. Mr. Buland last saw the children in September, 1990. Section 20-108.2(B)(2).

8. All of the nonmonetary contributions to the well-being of the children come from Mrs. Buland. Section 20-108.2(B)(13).

9. This Court previously found in August, 1990, that Mr. Buland could make $50,000.00 per year. This finding was never appealed. Section 20-108.2(B)(3).

10. Mrs. Buland has significant obligations. *See* Defendant's Exhibit No. 2. She cannot get a better job, and her current job allows her to avoid child care expenses. Section 20-108.2(B)(11).

11. Mr. Buland failed to provide Mrs. Buland with insurance information as required by the parties' agreement. Section 20-108.2(B)(16).

This Court acknowledges that the reduction in child support per the decree entered September 28, 1990, did not follow the procedure set forth in *Farley* and *Richardson.* However, the decree was not appealed, and it is final and the law of this case. There is no need to go back and reconsider the situation in September, 1990, under *Farley* and *Richardson.*

This Court cannot find Mr. Buland to be voluntarily underemployed. Even if it could, there is no evidence to set a just and appropriate amount to be added to the presumptive amount. The same is true for all the other factors listed above except for the payroll deduction order. Mr. Buland is willing to leave it in place. Presently it does represent a payment of more than his present child support obligation, but it also includes payment on arrearages ($300.00 per month as set forth in the payroll deduction order). Previously ordered child support payments cannot be retroactively modified except as allowed by

Section 20-108. Mr. Buland will always have the obligation to pay the arrearages. It should not prejudice Mr. Buland because he is willing to leave the present payroll deduction order in place. Any amount deducted in excess of a new child support award can certainly be applied to curtailing the arrearages.

Accordingly, no amount is added or subtracted from the presumptive amount except that the health care insurance cost paid by Mr. Buland must be subtracted under Section 20-108.1(G)(1).

Mr. Buland's child support obligation is set at $715.00 per month ($766.76 less $52.14 rounded to the next highest dollar) or $357.50 per month per child effective August 1, 1991 (date of the hearing). Of course, Mr. Buland still remains liable for the cost of living increase under the agreement as per the decree entered November 28, 1990.

The payroll deduction order entered April 23, 1991, will not be modified. It is the intention of this Court that the maximum amount be deducted with any excess over the child support obligation being applied to the arrearages. This Court expects Mrs. Buland to take whatever other action she may be advised as to the arrearages.