## Richmond

Elizabeth J. Fearon v. Gerard Andrew Fearon.

April 24, 1967.

Record No. 6377.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Thomas A. Fortkort* for the appellant.

No brief or argument for the appellee.

Snead, J., delivered the opinion of the court.

The dominant question presented in this appeal is whether a husband is entitled to receive credit for monies paid directly to his children or to others for the children's benefit when a divorce decree directs that a lump sum be paid periodically to the wife for the "support and maintenance" of herself and the children whose sole custody has been awarded to her.

On June 27, 1961, the Circuit Court of Fairfax County entered a decree granting Elizabeth J. Fearon, appellant, a divorce *a mensa et*

*thoro* from her husband, Gerard Andrew Fearon, appellee, on the ground of constructive desertion. The decree awarded sole custody of their three children to Mrs. Fearon, and it directed that Fearon pay to Mrs. Fearon the sum of $200 on the first and fifteenth of each month for the "support and maintenance" of herself and the children.

Subsequently, on June 18, 1965, Fearon filed in that court a petition to enlarge the decree of divorce from bed and board into a decree of divorce from the bond of matrimony, and to reduce the amount of support to $300 because two of the children "were no longer in the care and custody" of the mother and have been emancipated. Based on an affidavit filed by Mrs. Fearon on June 25, 1965, alleging that Fearon was in arrears in payments for the support of herself and the children directed by the decree of June 27, 1961, the court issued an order directing Fearon to appear and show cause why he should not be held in contempt for failure to make the required payments.

An *ore tenus* hearing was had on July 1, 1965, and the testimony of the witnesses is before us in narrative form.

Mrs. Fearon, who was then residing in Florida, testified, among other things, that she had at all times since the entry of the decree of divorce from bed and board maintained a home for the use and benefit of her children, Gerard, Jr., age 22; Joseph, age 20; and Philip, age 15. She stated that she was employed as a school teacher until she became ill and resigned in June, 1964; that Gerard, Jr. attended the University of Virginia after she and Fearon separated and except for short visits with her, he spent the summers with his father; and that while she was employed she sent Gerard, Jr. "up to one-half of the support money she had received to further his education."

Mrs. Fearon further testified that Joseph had lived with her part of the time, but he became a problem child and ran away from her home; and that thereafter on occasions he resided with her or his father, "but usually his whereabouts was unknown or in the custody of law enforcement authorities in Florida and Virginia." She said that Philip lived with her "at all times except for visits with his father." She also said that on September 25, 1962, she "instituted a support action in the District of Columbia for herself, Gerard, Jr., and Philip".[1]

---

(1) The record does not show why the proceeding was instituted in the District of Columbia court, but apparently Fearon was either residing or working in Washington, was not making support payments as set forth in the decree of June 27, 1961,

The "business records" of Mrs. Fearon offered in evidence showed that since June 27, 1961, there was an arrearage in the amount of $6,350.

Fearon, who was then remarried and residing in Chevy Chase, Maryland, introduced in evidence cancelled checks payable to Mrs. Fearon, the children, and to others. Over the objection of Mrs. Fearon he also introduced account sheets "showing the cancelled check numbers and cash payments, the names of persons to whom all checks and cash payments were made, for what purpose and for whose benefit these payments were made." He testified that Gerard, Jr. had lived with him from June, 1962 until June, 1965 except for the periods he was in attendance at the University of Virginia. He conceded that Mrs. Fearon had made contributions towards Gerard, Jr.'s. tuition and expenses at the University. He further testified that on March 1, 1962, the Juvenile Court of Valusia County, Florida, awarded him the custody of his son, Joseph.

Gerard, Jr. stated that he graduated from the University in June, 1965; that he was presently living with his father; that his mother gave him "substantial sums of money at varying times" and had sent him all the money he received during his first two years at the University; that in May, 1963 he called upon his father for financial assistance, and that thereafter his father sent him "about $100 per month for about two years."

In a letter opinion, dated July 9, 1965, the trial court found, among other things, that through June 30, 1965, Fearon should have paid Mrs. Fearon $19,200 pursuant to the decree of June 27, 1961 requiring monthly payments of $400, and that she had actually received $12,850. The court stated that the decree of June 27, 1961 "makes no apportionment", but "it appears that all parties considered the $400.00 to be divided equally among the three (3) children and Mrs. Fearon, or $100.00 a piece (sic). This is borne out by the September 25, 1962 order of the District of Columbia Court." [2]

The trial court also observed that all parties since February, 1962, considered Joseph's support as being paid directly by his father. The

and Mrs. Fearon filed a petition under the Uniform Reciprocal Enforcement of Support Act for relief.

(2) The record before us contains no testimony that all of the parties considered that the required monthly payment of $400 was to be divided equally among Mrs. Fearon and the three children. Fearon did introduce a copy of a court order, dated September 25, 1962, entered by The Municipal Court of the District of Columbia (Domestic Relations Branch) which ordered him to pay $300 per month for the support of Gerard, Jr., Philip and Mrs. Fearon.

court stated that this conclusion was consistent with the order of September 25, 1962, entered by the Municipal Court of the District of Columbia, and that Fearon was entitled to a credit of $100 per month from February, 1962 for Joseph's support. Similarly, the court found that Gerard, Jr., had received support directly from his father since May 1963, and a credit of $100 per month would be allowed from that date.

Based upon the foregoing, the court made the following computations:

"Payments of $400.00 per month from July 1, 1961 to June 30, 1965 ....................................... $19,200.00

Less:

|  |  |
|---|---|
| Credit for payments made | $12,850.00 |
| Credit for support of Joseph from February, 1962 | 4,000.00 |
| Credit for support of Gerard, Jr. from May, 1963 | 2,400.00 |
|  | $19,250.00" |

As a result of the allowance of the above credits for the support of Joseph and Gerard, Jr., the court found that there was no arrearage, and by decree entered on July 16, 1965, which is the basis of this appeal, Fearon was adjudged not in contempt and the rule was dismissed. On the same day another decree was entered merging the decree of divorce from bed and board into a decree of divorce from the bond of matrimony. This decree provided, among other things, "that the matter of permanent alimony and support be left open * * * and in the meantime the support order of June 26, 1961 [June 27, 1961] shall remain in effect."

Mrs. Fearon makes four assignments of error. All relate to the issue of whether the trial court erred in allowing her former husband, Fearon, credit for support payments not made to her.

While there is authority elsewhere to support the trial court's action in allowing such credits, this court has adhered to the rule that support payments must be made by the husband in accordance with the terms of the decree. In the case at bar, the decree directed that payments be made to Mrs. Fearon. In *Newton* v. *Newton*, 202 Va. 515, 519, 118 S.E. 2d 656, we said: "[I]t is the obligation of the divorced husband to pay the specified amounts *according to the terms of the decree* and * * * he should not be permitted to vary

these terms to suit his convenience. In such a decree the required payments are fixed according to the needs of the child or children and the ability of the husband to pay. Should these vary, from time to time, and warrant a change in the terms of the decree favorable to the husband, his remedy is to apply to the court for such relief." (Italics supplied.) See also *Cotton* v. *Wright*, 193 La. 520, 190 So. 665; *Bradley* v. *Fowler*, 30 Wash. 2d 609, 192 P.2d 969; *Roberts* v. *Roberts*, 216 Ark. 453, 226 S.W. 2d 579; 27B, C.J.S., Divorce, § 321(1), p. 636; 24 Am. Jur., 2d, Divorce and Separation, § 872, p. 992; 2 A.L.R. 2d 831.

In *Bradley* v. *Fowler*, *supra*, the court held that the husband was not entitled to credit money he expended on his children for medical attention and clothing against support payments due his former wife under the terms of a decree providing for the children's support. In so holding, the court stated:

"We appreciate that it might be argued that it is not equitable to require respondent to pay support money to appellant for the time the children were in his custody, and that, this proceeding being one of an equitable nature, the court was justified in allowing to respondent a credit of one hundred twenty-five dollars against the amount he was required to pay. However, we are of the opinion that even a court of equity, in an effort to do equity, cannot disregard the provisions of a lawful decree, nor is such a court justified in offsetting against payments required to be made under such a decree voluntary payments made for medical attention and clothing furnished children, as was done in this case. If, under such a decree as we have here before us, the father could refuse to make the payments required of him, and in an attempt to justify such refusal show that he had expended certain sums of money on his children while they were with him, it is evident there would be continuous trouble and turmoil. If a party to such a decree is not satisfied with its provisions relative to the custody of the children, or payments required to be made for their support, such party may always come into court and ask for a modification of the decree." 30 Wash. 2d 609, 620, 192 P. 2d 969, 975.

The decree of June 27, 1961, awarded sole custody of the Fearon children to their mother. It specifically directed that Fearon *pay to Mrs. Fearon* $200 on the first and fifteenth of each month for the support and maintenance of herself and the children. The decree did not apportion among them the amount awarded. The object of such

a decree is to provide the divorced wife with funds so that she can provide a home and support for herself and the children. The disbursement of these funds is her privilege and responsibility.

The record does show that Fearon voluntarily paid substantial sums directly to Gerard, Jr. and to others for the children's benefit. These payments must be regarded as gifts or gratuities and they cannot be credited to his obligation to pay Mrs. Fearon. Under our ruling in *Cofer* v. *Cofer*, 205 Va. 834, 839, 140 S.E. 2d 663, 666, a court is without authority to modify its decree retroactively and relieve the husband of the obligation to pay past due installments. As we indicated in *Newton* v. *Newton, supra,* a divorced husband must pay "according to the terms of the decree". When conditions changed, Fearon's remedy was to apply to the court and have it modify the terms of the decree.

Our conclusion is that the trial court erred in allowing Fearon credits for support payments not made to Mrs. Fearon and in failing to hold that he was in contempt.

Accordingly, the decree appealed from is reversed and the cause is remanded for the entry of a decree not inconsistent with the views herein expressed.

*Reversed and remanded.*