# CIRCUIT COURT OF THE CITY OF RICHMOND

Ellen M. Thurmond

v.

Alan A. Gropper

March 5, 1998

Case No. HG-822-1; File No. 97H-4426

BY JUDGE MELVIN R. HUGHES, JR.

In this ended divorce proceeding, the case is before the court on the defendant-husband's Petition for Reinstatement and for Modification of Spousal and Child Support. The plaintiff-wife has filed Plaintiff's Response to Petition of Defendant and Plaintiff's Motion to Modify Custody and Visitation. Hereafter the parties will be referred to as Alan and Ellen.

On May 23, 1997, the court entered a Final Decree dissolving the marriage of the parties. According to the Final Decree, the parties "reached agreement on all the issues pending before this court." The decree disposes of the parties' properties and interests in equitable distribution and sets spousal and child support. The parties have one child, a girl, Hannah, age 6. Regarding spousal support, the Decree reads:

It is further ordered that the defendant shall pay to the plaintiff as spousal support and maintenance the sum of $2,000 per month commencing April 1, 1997, due and payable on the first day of each month. Said spousal support shall not be subject to modification by either party for a period of six months from April 1, 1997; however

spousal support shall be subject to modification by either party thereafter pursuant to the then prevailing legal standards.

The Decree goes on to provide that the parties shall have joint custody of their child with physical custody to Ellen. It further provides that Alan shall have "reasonable rights of visitation." The Decree also directs Alan to pay $750.00 a month child support "without prejudice to either party."

When the court entered the Final Decree, Ellen was employed part time as a licensed clinical social worker earning approximately $12,000 per year. Ellen received the marital home as a part of the equitable distribution award. There was approximately $43,000 in equity in the residence at the time. In addition, Ellen received her checking account, a 1989 Jeep Cherokee, her brokerage account, an IRA, all household furnishing except one rug, any and all assets held in her individual name, and $250,000 in cash. Alan was awarded his checking account, various brokerage accounts, an IRA, an annuity, an office building in Petersburg out of which he maintains an office for his dental practice, the dental practice's brokerage account, a Colorado time-share, property in Cumberland County, household furnishings in his possession, a rug, and any and all assets held in his individual name. In addition to the child support, Alan was ordered to pay Hannah's health insurance premiums.

In July 1997, Ellen moved from the former marital residence and purchased a smaller, less expensive home. Ellen applied the equity from the sale of the marital residence along with a portion of her equitable distribution award to purchase the new home. As a result, Ellen reduced her monthly expenses by eliminating the mortgage payment. Ellen has also seen a reduction on other more minor expenses as well. At the time of divorce, Ellen's estimated monthly expenses were $6,000 per month. According to a December 18, 1997, letter by Alan's counsel, Ellen's current average monthly income is $3,679 ($929 in salary and $2,750 in spousal and child support payments). Ellen testified that, in November 1997, her earnings for that month were approximately $1,300. She otherwise described her earnings as "slowly increasing." Her monthly expenses are now about $3,300.00.

On September 19, 1997, Alan filed the Petition. He contends that there has been a change in circumstances which warrants a modification in his support obligations. As noted, Ellen responded and denied that there has been a material change in circumstances since April 1997 and asks that Alan's support obligations not be modified. Further, Ellen seeks to modify child custody and visitation. She wants sole custody of Hannah and structured

visitation every other weekend and one night during the week. Ellen cites Alan's uncooperative manner and changes in Hannah's daily routine and schedule. Finally Ellen contends that Alan has failed to make timely spousal support payments from April 1997 to June 1997. After the court took evidence on the petition and motions in December 1997, the case has been under advisement.

## Modification of Spousal and Child Support

The standard for modifying spousal and child support award is a material change in circumstances and the change warrants a revision in the terms of support. *Furr v. Furr*, 13 Va. App. 479, 481 (1992) (citation omitted). The allegations made to support a change must be proved by a preponderance of the evidence. *Crosby v. Crosby*, 182 Va. 461, 464 (1946). The court has authority to modify previously ordered spousal support under § 20-109. The court need only assess the parties' current circumstances in light of their situation at the time of divorce. "[S]pousal support awards must be determined in light of contemporary circumstances and then, if necessary, redetermined in light of new circumstances." *Jacobs v. Jacobs*, 219 Va. 993, 995 (1979). However, the court is not automatically required to grant a reduction in support once it is found that the obligee's financial position has improved. *Yohay v. Ryan*, 4 Va. App. 559 (1987).

At the hearing, the court expressed a concern that Alan's request for modification is based on changed conditions which are a result of Ellen's decision to use assets from her equitable distribution award. The court was concerned that a spouse should not be penalized for using the award under the circumstances. Upon consideration of the facts and circumstances and the authorities given for and against the question, the court decides that these issues need not be addressed because the evidence while showing a decrease in Ellen's expenses does not demonstrate a change sufficient enough to warrant modification at this time.

Although Ellen has reduced her expenses by eliminating a mortgage payment, her expenses compared to her income (support and income) are roughly equal. While Ellen testified she is deriving more income from employment, her income is not now consistently higher to establish a sufficient track record of increased earnings, given the time involved. Part of the reason given for Ellen's increased earnings is the fact that Hannah is now able to attend school full time, allowing more time for Ellen to pursue her career goals. This situation has obtained for only a few months. As noted,

Ellen's income is not consistent over time and cannot be considered now as a major factor to adjust the support obligation downward, as Alan contends, at this time. Accordingly, the court will not modify Alan's support obligations on this evidence.

### *Motion to Modify Custody and Visitation*

According to Va. Code § 20-108:

> The court may ... on petition of either of the parents ... which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require.

Generally, a court that is determining whether a change in custody is warranted "applies a two-part test: (1) whether there has been a change in circumstances since the most recent custody award; and (2) whether a change [in custody] would be in the best interests of the child." *Hughes v. Gentry*, 18 Va. App. 318, 321 (1994) (citation omitted). The parent seeking to obtain a custody transfer bears the burden of proving a change in circumstances. *Id.* at 322. If a change in circumstances has been demonstrated, the court should next give consideration to the best interests of the child. Va. Code § 20-124.2(B); *Venable v. Venable*, 2 Va. App. 178, 186 (1986). Evaluating the child's best interests may be accomplished pursuant to the nine-part inquiry of Va. Code § 20-124.3(1) to (9).

### *Visitation*

The determination of visitation rights is linked to a review of the custodial situation. *Wilson v. Wilson*, 12 Va. App. 1251, 1254 (1991). In both instances, the best interests of the child are paramount.*Id.*

> Where the General Assembly has directed courts to consider specifically enumerated factors in exercising discretion to determine domestic relations issues, the Supreme Court and this court have repeatedly held that it is reversible error for the trial judge to fail to consider those specifically enumerated factors [of Va. Code § 20-107.1 in determining visitation].

*Robinson v. Robinson*, 5 Va. App. 222, 227 (1987).

Upon consideration of the factors compared to the evidence, the court does not see a change in circumstances to justify a change in custody at this time. Ellen charges Alan with rude behavior in the parties' contacts concerning Hannah. Alan denies these assertions. Otherwise the evidence reveals the parties working through their schedules and Hannah's such that Hannah spends about an equal amount of time with both parents. Alan is a loving father who has taken great pains to make his home and to adapt his schedule to meet Hannah's needs. Ellen, on the other hand, is equally loving, and she too is heavily bonded to Hannah and is there for her to meet the child's every need. The evidence shows a constant shuffle throughout any given week to have Hannah available for visitation with either parent. As noted, the court does not feel that the custody arrangement, joint custody emanating from the Final Decree, should be changed now due to a lack of showing of changed circumstances. The court will hold to this view despite the suggestion by Ellen that Alan makes it difficult sometimes in communicating concerning scheduling etc. The court has concern, however, over the child's constant movement between the parents. This has come about, I believe, to meet each parent's interest to remain in Hannah's life, as they each should, but probably at the expense of the child's interests, which in these matters is the court's overriding concern. Accordingly, as opposed to the present arrangement under the Final Decree of "liberal visitation" to Alan, the court thinks a visitation schedule is best for predictability, for the sake of the child. Effective March 20, 1998, the period of visitation with Hannah for Alan shall be every other weekend. The visitation then shall commence after school on Friday and continue until Monday morning when Hannah goes to school. Otherwise Alan shall have visitation every week on Wednesdays starting that day after school until the following morning when Hannah returns to school. For the summer, Alan shall have visitation for eight weeks at his choosing. During this eight week period, Alan will not have a support obligation for an equivalent two month period. The court will leave to the parties and their counsel visitation for holidays.

### Failure to Make Timely Support Payments

Pursuant to a Temporary Agreement reached by the parties on May 29, 1996, Alan agreed to continue paying the mortgage payments on the marital home (including taxes and insurance); the utility bills (including telephone, water, gas, and electricity); health and auto insurance; Hannah's tuition; and $750 per month in spousal support. The parties agreed on joint legal custody, with the primary portion of shared physical custody with Ellen. The terms of

this temporary Agreement were read into the record but never submitted to the court in the form of an Order by either counsel.

Ellen is requesting the court to establish a spousal support arrearage for three payments of $2,000 each not received in the months of April, May, and June 1997. For payments, Alan contends that he paid the mortgage lender, insurers, etc. directly. The mortgage totaled $1,761 per month; the utilities, insurance, and tuition added at least $239 per month, for a total monthly outlay of $2,000 (the same monthly amount as the arrearage claimed by Ellen).

In support of her request, Ellen Cites *Fearon v. Fearon*, 207 Va. 927 (1967), for the rule that "it is the obligation of the divorced husband to pay the specified amounts according to the terms of the [lawful] decree and ... he should not be permitted to vary these terms to suit his convenience." *Id.* at 930-31 (citation omitted). The husband made support payments to the child rather than directly to the mother, which resulted in an arrearage due to the mother. In the instant case, no "lawful decree" existed at the time the payments were made. As no provisions were made for the manner in which payments were to be made prior to entry of the Final Decree, it is inaccurate to say that Alan varied the terms of the Temporary Agreement to suit his convenience. Ellen testified that she would have taken the $2,000 and paid these items herself.

In *Newton v. Newton*, 202 Va. 515 (1961), the Court took the view that:

it is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree and that he should not be permitted to vary these terms to suit his convenience. In such a decree the required payments are fixed according to the needs of the child or children and the ability of the husband to pay. Should these vary, from time to time, and warrant a change in the terms of the decree favorable to the husband, his remedy is to apply to the court for such relief. To permit him to increase the amount of the specified payments at one time, reduce them at another, and require an adjustment of the differences in the future, would lead to continuous trouble and turmoil.

*Id.* at 519. See also, *Henderlite v. Henderlite*, 3 Va. App. 539, 542 (1989). Here, Alan is not seeking a "set-off" of earlier non-conforming payments against future payments due. He is merely seeking the court's recognition that he complied with the term of the Temporary Agreement by making direct payments to the couple's creditors until he was informed that the Final Decree had been entered.

In *Stultz v. Stultz*, 16 Va. Cir. 174 (Frederick Co. 1989), Judge Woltz recited the general proposition that:

payments not made precisely in conformance with the terms of a support order are not allowable as credits against the support payments so ordered ... and the payor under an order of support must pay according to the terms of the order and may not vary those terms to suit his convenience.

*Id.* (citing *Fearon* and *Newton*). The husband attempted to offset payments made to purchase a residence in the parties' joint names against the support payments that he owed. In the instant case, Alan was paying *existing* obligations directly. The support payments were made for the proper purpose but received by the creditors without disbursement by Ellen.

Finally, in *Rippy v. Rippy*, 13 Va. Cir. 188 (Caroline Co. 1988), the husband sought credit for various payments made over the years on behalf of his son. The court responded that Mr. Rippy was required to make these payments to Mrs. Rippy for the benefit of their child. Although Mr. Rippy was given partial credit for the purchase of clothes, school supplies, and medical services that were properly documented, a substantial arrearage still existed. The payments in the instant case were neither gratuitous and insufficient as to amount. Full credit should be accorded to Alan.

In *Wilderman v. Wilderman*, 25 Va. App. 500 (1997), the court held that "[a] court may, when equitable and under limited circumstances, allow a party credit for non-conforming support payments, provided that the non-conforming payment substantially satisfies the purpose and function of the support award and to do so does not vary the support." *Id.* at 506 (citation omitted). The unequivocal assent of the payee spouse to a variance of the support terms may not be required so long as these two provisions are met. *Id.* at 507. The court finds that principles of equity and fairness dictate that Alan be accorded credit for the payments properly made to his wife's creditors during the pendency of the divorce proceedings. In other words, the payments made during the three months should not be considered an arrearage. The Temporary Agreement provided that Alan was to pay the mortgage, utilities, insurance, and tuition. No provisions were made as to whether payment would be made to Ellen or the creditors directly. Further, the parties never memorialized the Agreement in an Order. The payments were not gratuitous or for services other than those anticipated by the Temporary Agreement. Alan should not be penalized for meeting his financial responsibilities in a timely fashion. The purposes and function of the support award has been met.

Accordingly, for the foregoing reasons, the respective petitions are granted in part and denied in part.