# CIRCUIT COURT OF LOUDOUN COUNTY

Sophia Anne Jaynes

v.

Donn Edwin Jaynes, Jr.

February 2, 1999

Case No. (Chancery) 18507

BY JUDGE JEAN HARRISON CLEMENTS

This cause came on to be heard on September 25, 1998, upon the issue of Defendant/Cross Complainant, Donn Edwin Jaynes, Jr.'s (Defendant or Husband), Motion to Incorporate the Parties' Property Settlement Agreement dated March 10, 1997, into an Order of this Court. In opening statement, counsel for Complainant/Cross Defendant, Sophia Anne Jaynes (Complainant or Wife), objected to the ruling sought by the defendant and asked the Court to determine the agreement as unconscionable and invalid in whole or to determine the military pension of Husband, not included in the agreement, as subject to equitable distribution. Ancillary to the issue of the incorporation of the parties' agreement was the issue of child support, *pendente lite*, raised by the Wife. Evidence was presented on behalf of the parties, argued by counsel, and taken under advisement by the Court. Briefs were submitted by both parties.

The parties were lawfully married on July 23, 1983, in Jacksonville, Florida. There was one child born of the marriage, Jennifer Lynn, on November 20, 1984. Jennifer resides with the Complainant, her mother. Both parties live in Ashburn, in Loudoun County, Virginia. The Defendant is a naval officer with Grade 5 status earning $7,205.09 gross income per month, and the Complainant is an office manager with Winstar Wireless, Inc., earning

$46,000.00 per year. The Husband has been in the military for twenty-four years. The Wife graduated from college in 1995 and owes approximately $50,000.00 on an outstanding student loan.

The Complainant testified to several violent acts of the Defendant during the marriage: a violent act towards her father, several violent acts against property, and while driving, a violent threat towards a stranger. Complainant also testified about her fear of the Defendant hurting himself and her fear that he might commit suicide. During her testimony, the Complainant illustrated each of the representations with examples and concluded that these things caused her to fear for her safety and her husband's safety. She also testified that from November 1996, for approximately eight to ten weeks, she was in a compromised physical condition because of surgery.

The evidence was undisputed that for fourteen years, the Wife never called the police or the military as a result of any of these concerns or acts and that the child often stayed or visited with her father (the Defendant). There was no evidence of any suicidal act by the Defendant.

After Christmas 1996, the Wife told the Husband that she was no longer happy and wanted out of the marriage. He did not want a divorce. The parties began living separate and apart under the same roof. While in counseling, the Wife decided that she needed to move out of the home. She found a townhome and thereafter stopped contributing financially to the marital home. She testified that she needed a property settlement agreement to qualify for a loan in order to purchase the townhome.

Complainant procured a "form" agreement from a law firm where she had previously worked but did not receive legal advice from any attorney at the firm. Using the "form" agreement, Complainant drafted a separation and property settlement agreement (Defendant's Exhibit 2) without consultation or input from the Defendant and presented it to him on Sunday, March 9, 1997, with the acknowledgment that she no longer wanted to be married and wanted a divorce.

Complainant authored the agreement based upon her knowledge of the parties' financial circumstances. She knew the defendant had spent twenty years in the military and that he was entitled to a military pension. She also knew that the Defendant had a prior wife now living in California. It was the Complainant's testimony that she did not mention pension benefits in the agreement because she did not think it was necessary; she thought her rights to a marital share were "automatic." Later, the Complainant testified she did not think the agreement was a full and final agreement.

The Husband did not ask his Wife to prepare or sign the agreement and knew nothing of it until it was handed to him on Sunday, March 9th. At that same time, the Wife told him she no longer wanted to be married and wanted a divorce. The Husband only questioned the language in the agreement referencing their living status and signed the agreement before a Notary in Arlington, Virginia, on March 10, 1997. The Wife signed the agreement before a Notary in Fairfax, Virginia, on March 10, 1997.

By the parties' agreement, the Husband is to receive the marital home which he purchased; the mortgage has always been in his name only. He is also to assume responsibility for approximately $95,000.00 of marital debt. The Wife is to assume responsibility for her approximately $50,000.00 of student loan debt. Each gets a car, and the Wife has since received a $3,000.00 tax refund. Spousal support is waived. The agreement provides for the Husband to assume the debts outlined in Paragraph 4 in lieu of maintenance and support of the child.

Husband provides the child with health insurance through the Armed Services Medicare Program and all charges incident to its use. If there are immediate charges not provided, each parent is to pay one-half. The agreement extends for the benefit of the child health insurance coverage, life insurance coverage, and child support beyond an age that the Court could order the Defendant to provide.

The Wife testified it would take the Husband ten years to pay the debt, and the child, now 14 years old, would be beyond an emancipating event by then. She also told the Court that she would not have agreed to assume the student loan debt or to waive spousal support or child support if she had no pension rights.

The value or equity of the marital home and the value of the pension are not stated in the evidence.

The contested issues to be determined by the Court upon the evidence are (1) the incorporation of the Separation and Property Settlement Agreement entered March 10, 1997, which does not include a specific provision for Wife's marital share of the Husband's military pension and (2) child support. It is the opinion of this Court that despite the preeminence of the incorporation issue as argued by counsel for the parties, the threshold issue is the determination of child support.

There is no child support order, and no child support agreement has previously been incorporated in the case at bar. The issue of child support has been presented by the Mother for adjudication, and this Court must determine the child support obligation of each of the parents as the first issue. The

appellate courts have held that when parties have agreed upon an amount of child support, the trial court must determine the guideline amount and then may weight this amount with the provisions of the separation agreement. *Scott v. Scott*, 12 Va. App. 1245, 408 S.E.2d 579 (1991). If the factors described in Code §§ 20-107.2 and 20-108.1 justify an award based upon the provisions of the separation agreement instead of the statutorily presumptive amount, it may then enter an award in the amount provided for in the separation agreement. "The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternate sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying and incorporating, in whole or in part, the child support provisions of a contract." *Watkinson v. Henley*, 13 Va. App. 151, 409 S.E.2d 470 (1991). The starting point is the presumptive amount of child support under the guidelines. However, the evidence for determining the presumptive amount of child support using the guidelines of § 20-108.2 is insufficient, and the Court without further evidence or stipulation cannot determine at this time the rebuttable amount of child support.

The Court, at a hearing on November 6, 1998, asked counsel for both parties to present arguments in light of *Kelley v. Kelley*, 248 Va. 295 (1994), and whether it is controlling as to the issue of the validity of the parties' agreement. The *Kelley* case holds that the rights of minor children to support cannot be impinged by a contract of the parents and that any agreement between parents which substantially abridges a child's right to receive support from both parents is null and void.

Paragraph 9(a) of the parties' written agreement is pivotal to the issue of incorporating the agreement. Paragraph 9(a), Allowances to the Wife and Child, states as follows:

In lieu of the Husband paying the Wife for the maintenance and support of the child during the period when she is in the Wife's custody, the Husband agrees to assume responsibility for all of the outstanding debts previously mentioned in paragraph 4 of this Agreement, excluding any and all of the Wife's student loans with Sallie Mae. Parties agree that the Wife shall be entitled to the tax exemption for the child. After said debts from the marriage of the Parties is paid in full, the Husband agrees to pay for the maintenance and support of the child in the Wife's custody an amount to be determined and agreed upon at that time. All such payments shall be

increased annually on January 31st by the amount of the increase in the Consumer Price Index (CPI) for the prior year. Support for said child shall terminate upon the occurrence of an Emancipation Event as provided in paragraph 10, upon the death of the Husband, or upon her adoption by another Party, whichever shall first occur.

Both parents owe a duty of support to their minor children. *Featherstone v. Brooks*, 220 Va. 443, 448, 248 S.E.2d 513, 516 (1979). Parents cannot contract away their children's rights to support, nor can a court be precluded by agreement from exercising its power to decree child support. *Id.; Kelley*. The Wife argues that the *Kelley* case cannot be distinguished from the present case. In *Kelley*, a separating couple executed an agreement whereby the husband relinquished all of his equity in the jointly-owned marital home in return for an agreement that he would never be responsible for child support for the couple's two children. In the event a court would grant child support in the future, the wife agreed to pay directly to the husband any amount of support that he would be directed to pay; in other words, the wife was agreeing to hold harmless the husband from any amount of child support. The Court in the *Kelley* case found that provision void and unenforceable. The Wife in the case at bar alleges that the Husband has structured an extended debt payment plan that does not end until after his obligation to pay child support terminates, and therefore, he has contracted away his obligation from ever paying child support.

Husband argues this is a valid child support agreement and can be distinguished from *Kelley* in that he is supporting his child by making monthly payments toward debt. By doing so, the Wife is relieved of those obligations and her cash flow is enhanced. The debt he is paying, Husband argues, would be the obligation of both parties in lieu of this arrangement. By relieving the Wife of this financial burden, a more stable environment is created for the child. Husband further argues that the parties' agreement merely allocates the income resources of the parties in the manner they deemed appropriate, the Defendant's income to payment of debt, and the Complainant's to support of the child. Furthermore, Husband is making significant monthly payments for the child's benefit through payment of life insurance premiums, by providing health insurance through his employment, and access to military privileges.

The dependent child is not his parents' business partner. *Conway v. Conway*, 10 Va. App. 653, 394 S.E.2d 464 (1990). "In setting an award of child support, the 'primary issue before a trial judge is the welfare and best interest of the child, not the convenience or personal preference of a parent'."

*Hamel v. Hamel,* 18 Va. App. 10, 13 (1994); *Brody v. Brody,* 16 Va. App. 651, quoting *Hur v. Department of Social Servs.,* 13 Va. App. 54, 60, 409 S.E.2d 454, 458 (1991). The Court finds there is no child support amount or terms of payment identified in Paragraph 9(a) of the parties' agreement. The Husband currently pays no child support. The Husband agrees to assume responsibility for all of the outstanding debts mentioned in Paragraph 4, identified only by creditor name and account number, in lieu of paying the Wife support and maintenance of their minor child. Under *Richardson v. Richardson,* 12 Va. App. 18 (1991), the Court, in order to deviate from the presumptive amount of guideline child support must make written findings "adding or subtracting a just and appropriate amount from the presumptive amount." *Richardson,* 12 Va. App. at 19. There is no evidence of a "just and appropriate amount" that can be added or subtracted in paragraph 9(a) of the parties' agreement. Allowing the court to assign an amount to a given factor based on the subjective feelings or views of the judge would be contrary to the reasons for the guidelines. *Buland v. Buland,* 25 Va. Cir. 280 (1991).

Code § 20-108 gives trial courts continuing jurisdiction to modify their decrees respecting support of minor children where circumstances justify such alteration. Parents, by their private contract, cannot divest the court of this jurisdiction. The parties' agreement does not include fixed support sums or terms of payment which the Court could modify or enforce. Paragraph 9(a), lacking specific terms, affords the Husband an ability to unilaterally vary the terms of payment on debt without need to apply to the Court for relief and is contrary to § 20-108. Generally, the terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree. *Fearon v. Fearon,* 207 Va. 927, 930-31, 154 S.E.2d 165 (1967); *Newton v. Newton,* 202 Va. 515, 518-19, 118 S.E.2d 656, 658 (1961). As written, without designation of a payee and without specific terms which could be incorporated into a decree, the Husband is afforded the opportunity to increase the amounts paid at one time and to reduce them at another.

Although parties to a property settlement agreement may contract away their rights, public policy cannot permit parents to contract away the child's best interest or the Court's responsibility to act in the best interest of the child. The phrase "in lieu of" found in paragraph 9(a) of the parties' agreement divests the divorce court of its jurisdiction to enforce or modify a support obligation through its contempt powers contrary to § 20-108, Code of Virginia. The Supreme Court has repeatedly said that a decree of court, entered in a divorce suit, approving a contract between the parties for payments in lieu of

alimony and for the settlement of property rights is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with the contract. *Martin v. Martin*, 205 Va. 181 (citing *Moore v. Crutchfield*, 136 Va. 20, 28, 116 S.E. 482, 484 (1923)); *Barnes American v. Fert. Co.*, 144 Va. 692, 714, 130 S.E. 902, 908; *DeHart v. DeHart*, 164 Va. 455, 460, 180 S.E. 307, 310 (1935); *Henebry v. Henebry*, 185 Va. 320, 332, 38 S.E.2d 320, 327. This Court imparts the same meaning to a decree for child support.

The parties' agreement to pay creditors *in lieu of* child support creates a bilateral contract not enforceable through the contempt powers of the divorce court. If changed circumstances dictate a modification of a support decree, the appropriate remedy by Code § 20-108 is for the party to petition the court to modify the decree. *Fearon v. Fearon*, 207 Va. 927, 930-31, 154 S.E.2d 165, 167 (1967); *Newton v. Newton*, 202 Va. 515, 518-19, 118 S.E.2d 656, 658 (1961). However, in the case at bar, modification would be subject to a suit in contract. Code § 20-108 gives the divorce court continuing jurisdiction to change or modify its decree concerning the custody and maintenance of minor children, and a contract between husband and wife cannot prevent the court from exercising this power. *Carter v. Carter*, 215 Va. 475, 481, 211 S.E.2d 253, 258 (1975).

Paragraph 9(a) of the parties' agreement contracts away the child's right to support and the Court's jurisdiction to modify and enforce a support decree. Case law has made clear that the Commonwealth of Virginia has maintained as an issue of first import the welfare of its children. This agreement between the parties creates a contract serving the best interest of the parents in lieu of providing support for the child. Child support should be fixed, enforceable, and modifiable by the divorce court. The Court finds the agreement in Paragraph 9(a) between Sophia and Donn Jaynes contrary to public policy and void.

Virginia Code § 20-109.1 bestows upon the court the discretion to determine whether any valid property settlement agreement should be affirmed, ratified, and incorporated by reference into a decree of the court upon the dissolution of a marriage. "If a property settlement agrement contains the parties' agreement regarding child support and the trial judge determines to exercise his or her statutory authority to set child support, the trial judge may ratify, affirm, and incorporate the agreement, except for the provisions concerning child support, if that result is consistent with the terms of the agreement." *Spagnolo*, 20 Va. App. 736, 460 S.E.2d 616 (1995). This Court looks to *Spagnolo* as its next point of reference.

In *Spagnolo*, the Appeals Court reversed the trial court's decision to incorporate the child support provision of an agreement, which included the husband's obligation to pay college expenses and insurance for the parties' child after the child's minority, when the trial judge at the same time also increased the monthly amount that the husband was required to pay as child support. The obligations of the support provisions as agreed to by the parties were found to be mutually dependent and a balance struck between those arrangements which were integral to the agreement for the child's support. Namely, the father obligated himself to pay college expenses and insurance for the child after the child's majority in consideration for monthly support payments below the guideline amounts found in § 20-108.2. The husband's agreement to pay post-minority benefits for the child could not have been lawfully ordered by the trial judge, except by enforcement of the parties' own validly negotiated agreement.

Both parties in their briefs to the Court have acknowledged the mutual dependence of Paragraph 4 in the agreement with Paragraph 9(a). See Paragraph 22 of the Complainant's Response Memorandum in Support of Complainant's Opposition to Incorporation of Property Settlement Agreement and Defendant's Memorandum to Complainant's Supplemental Memorandum in Opposition to Incorporation of Property Settlement Agreement, fourth page.

Several other provisions in the agreement, Paragraphs 5(a), 7, 10, and 12, pertain to auxiliary support obligations for the child, i.e., health care, life insurance, emancipation events, with terms that would be enforceable by the court, but only by agreement of the parties.

In addition, when read as a whole, Paragraphs 4, 5(a), 7, 9, 10, 12, and 14 intertwine the obligation of the parties in a way that make each mutually dependent and integral. The Court finds that an order to pay child support, in addition to the contract obligations to pay marital debts, to provide expanded health insurance and life insurance premiums, and to provide military benefits to be inconsistent with the intent of the parties' agreement.

For the reasons stated in *Spagnolo* and *Kelley*, the Court finds the property settlement agreement of March 10, 1997, to be unconscionable, and the Court will not affirm, ratify, or incorporate it in any decree. It would be in the parties' best interest to negotiate a settlement agreement that resolves the issues of this opinion letter without the Court's intervention. However, if that effort is of no avail, the case may be further docketed.