## CIRCUIT COURT OF FAIRFAX COUNTY

Nicholas Schacht

    v.

Fetneh H. Schacht

December 31, 2002

Case No. (Chancery) 136859

BY JUDGE KATHLEEN H. MACKAY

This case comes before the Court on a Rule to Show Cause issued on October 22, 2001, whereby the Respondent ("Wife") alleges that the Complainant ("Husband") owes her an arrearage in child support payable pursuant to the Final Decree entered on December 14, 1994. In order to enforce the Rule, the Court must analyze the effectiveness of a particular provision contained in the parties' July 1, 1992, Property Settlement Agreement ("PSA") that was incorporated into the Final Decree.

After a series of continuances, this Court presided over a hearing on the Rule on July 24, 2002. At the July hearing, the Court also heard evidence on the Complainant's Amended Motion for a Reduction in Child Support and the Court took both matters under advisement.

Subsequent to the hearing, the parties notified the Court that the Complainant's employment situation had changed once again so that a final decision on the Motion would have to be postponed in order that the parties could present the Court with more up-to-date information at a future hearing. Thus, this opinion letter will deal only with the Rule.

The issues presented through the Rule appear to be complex given recent rulings by the Court of Appeals and the Supreme Court. Counsel has been assiduous in briefing these issues and arguing them to the Court,

appearing as recently as December 10, 2002, to respond to the Court's questions.

## Facts/Working Documents

The parties have three children: Armita Schacht, born March 23, 1983; Anahita Schacht, born December 6, 1984; and Eugene Schacht, born August 31, 1986.

The Final Decree in this case incorporates the following support provisions contained in the parties' PSA.

## Support and Maintenance of the Children

The Husband shall pay to the Wife the sum of Three Thousand One Hundred Dollars ($3,100.00) per month as and for child support, payable $1,550 twice a month . . . commencing on June 30, 1992, and continuing on the aforesaid days and every month thereafter for a period of fifteen (15) years (i.e. 180 months) from the date of execution of this Agreement. However, in the event all of the parties' children have either married, died, or entered, voluntarily, the military service as full time career personnel, then upon the happening of these events, if applicable to all of the parties' children, the Husband's child support obligation shall cease and terminate.

Complainant's Ex. 4 at 2-3.

## Increase of Support Payments

The Husband agrees that, during the aforesaid fifteen (15) year term, he shall increase the aforesaid amount of child support by paying to the Wife *fifty percent (50%) of all raises and bonuses* that he receives from his employers. The parties agree that the Wife shall receive the aforesaid monies net of taxes and the parties agree that net shall be defined as the gross amount after the required deductions for State, Federal, and FICA taxes based upon one exception. The Husband agrees to promptly notify the Wife of all such raises and bonuses. In the event that he has failed to do so, all such amounts that would then be owing to the Wife as arrearages under this provision shall bear

interest at the rate of one (1%) per month (i.e. twelve percent (12%) per annum).

Complainant's Ex. 4 at 3 (emphasis added).

The Final Decree incorporated these provisions except that the $3,100 monthly child support amount was increased to $3,200. Subsequent to the entry of the Final Decree the parties purported to amend or change the amount of child support defined by the provisions cited above as follows.

On March 27, 1995, Wife wrote to Husband stating, "This is to confirm our conversation of yesterday and today. I accept the purchase of a computer for our children in lieu of 50% of your bonus for 1994. . . ." Complainant's Ex. 5B.

On January 25, 1996, Wife again wrote to Husband stating, among other things, that she expected a monthly increase in support of $52.02 as a result of Husband's increase in salary. Wife figures $26.01 per pay period which equals $52.02 per month. Resp't. Ex. 2 & 3.

On March 9, 1998, both parties signed an "Amendment to Custody, Support and Separation Agreement" whereby Husband agreed to increase his monthly support payments to $99.98, thus increasing the semi-monthly payment from $1,626.01 to $1,676.00. The monthly payment would be $3252.00. Husband also agreed to deliver to Wife a baby grand piano with a purchase price and delivery cost of approximately $2,175.00. Complainant's Ex. 5D.

Finally, on March 20, 1999, the parties entered into a second "Amendment" by which Husband agreed to increase his child support by $100 a month, the cost of automobile insurance for his daughter, Armita. At the time of this amendment, the monthly child support payable by Husband had been increased by the parties to $3,452.00. Complainant's Ex. 5E.

In summary, the parties agreed to monthly increases in child support as follows:

| PSA | | $3,100.00 per month |
|---|---|---|
| Decree | | $3,200.00 per month |
| 1996 | +52.02 | $3,252.02 per month |
| 1998 | +99.98 | $3,352.00 per month |
| 1999 | +100.00 | $3,452.00 per month |

Neither party disputes these basic facts. The actual child support paid by Husband is undisputed by counsel and is set out in Resp't. Ex. 7.[1]

By the terms of the PSA and the Final Decree, support for the children will be payable by the Husband until June 30, 2007, at which time the children will be 24, 22, and 21 respectively.

At the time of the hearing in July, Husband testified that he had lost his job as of April 28, 2002. His employer offered him a severance package. Complainant's Ex. 11. According to Husband, the company he was working for as a Chief Executive Officer, Global Learning Systems, was due to close its doors the Friday after the hearing.

*Husband's Argument*

At issue is the enforceability of the provision cited above, which obliges Husband to pay to Wife "fifty percent (50%) of all raises and bonuses that he receives from his employer." Complainant's Ex. 4 at 3.

Husband argues that this provision represents a constantly shifting support amount, that the parties cannot make such a prospective support award and that only a court can do such a thing, *citing Schmidt v. Schmidt*, 6 Va. App. 501, 506, 370 S.E.2d 311, 314 (1988), and particularly *Riggins v. O'Brien*, 263 Va. 444, 448, 559 S.E.2d 673, 676 (2002). Husband argues that the Schacht provision is akin to an escalator clause which is forbidden pursuant to *Jacobs v. Jacobs*, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979), and *Keyser v. Keyser*, 2 Va. App. 459, 461, 345 S.E.2d 12, 13 (1986).[2] See Complainant's Mem. in Opp'n. at 3 & Complainant's Mem. of Law at 5-7.

Further, Husband argues that, even if the clause in question could be deemed to be generally acceptable under the analysis in *Shoup v. Shoup*, 37 Va. App. 240, 556 S.E.2d 783 (2001), it is not in fact self-executing in that the term "raises and bonuses" is fatally ambiguous. See Complainant's Mem. of Law at 10.

In his coup de grace, Husband argues that "the agreement itself and the order which incorporates it is void as to these potential changes in child

---

[1] The parties entered into other Amendments relating to other obligations not relevant to support and these Amendments are not addressed here.

[2] The Court of Appeals in *Shoup* relied upon *Schmidt* for its holding that although a court cannot make a prospective award of support, the parties can. 37 Va. App. at 252. In *Keyser*, the Court of Appeals held that a court cannot order support to increase pursuant to an escalator clause. 2 Va. App. at 461. *Keyser* did not address the parties' ability to do so.

support. And I would suggest to you that it is void ab initio. . . ." Closing Arguments Tr. at 19-20.

Should a Court hold that the provision in question is valid, Husband argues that the various amendments whereby the parties attempted to quantify or carry out the provision are enforceable absent a showing of fraud on the part of Husband. See Complainant's Mem. of Law at 11.

### Wife's Argument

Wife argues, that the provision in Schacht is easily distinguished from the provision in *Riggins*, and, in any event, the decision in *Riggins* does not stand for the proposition that a provision in a Final Decree should not be enforced. Further, Wife argues that the provision is indeed self-enforcing and would meet that test as set out in *Shoup*. See Resp't. Reply Mem. at 5-7.

As to the amendments agreed upon by the parties, Wife argues that they are not enforceable since parties may not vary the terms of a support decree. *Gallagher v. Gallagher*, 35 Va. App. 470, 546 S.E.2d 222 (2001). What Husband is asking the Court to do would constitute a retroactive modification of support in violations of the principles enumerated in *Fearon v. Fearon*, 207 Va. 927, 154 S.E.2d 165 (1967). See Resp't. Reply Mem. at 5, 8-9.

And finally, the terms used in the provision, "raises and bonuses" are clear and unambiguous and the Court may use an universally accepted definition of these terms such as is set out in a standard dictionary.

### Schacht, Riggins, Shoup — How They Apply

What kind of provision is the Schacht provision? Is it ambiguous and nonenforceable or self-executing and enforceable? Answering this question requires an application of the principles recently announced in the *Shoup* and *Riggins* cases.

In both these cases, the appellate courts were called upon to analyze a specific support provision. The provisions are as follows:

In *Shoup*:

(c) The parties agree that they shall split, in the same proportion as their annual gross incomes bear to their annual combined gross income . . . any child care costs. . . . The Wife shall notify the Husband of any change in the amount of child care costs. In the event that child care costs rise in a month, the Husband shall be responsible for reimbursing the Wife . . . his

proportionate share of such increases. In the event that child care costs decline in a month, the Wife shall notify Husband who shall reduce his payment of child care costs on the first day of the next month by his proportionate share of such decline. . . ."

37 Va. App. at 245, and:

(d) The Husband shall make consecutive monthly installments of the child support until each child . . . reaches the age of eighteen (18) years. . . . If there is any change in circumstances, the parties shall follow the child support guidelines contained in § 20-108.2 of the Code of Virginia or its successor statute and any other relevant Virginia statutes and case law for determination of child support. . . .

*Id.*

In *Riggins*:

Robert John Riggins . . . shall pay unto the Plaintiff, Mary Louise Riggins, the sum of Three Thousand Two Hundred Fifty Dollars per month until said children shall attain the age of eighteen (18) years . . . provided, however, that the amount payable hereunder shall be renegotiated or submitted to a court for adjudication on the first event of emancipation. . . .

263 Va. at 446.

In *Schacht*:

The Husband agrees that, during the aforesaid fifteen (15) year term, he shall increase the aforesaid amount of child support by paying to the Wife fifty percent (50%) of all raises and bonuses that he receives from his employers. . . .

Complainant's Ex. 4 at 3.

The *Shoup* opinion was a comprehensive one that attempted to be a definitive statement as to the ability of parties to negotiate between themselves support provisions that could become effective without court intervention. Agreements between parties are sanctioned by Va. Code § 20-109.1.

The Court of Appeals in *Shoup* acknowledged the public policy in Virginia that encourages parties to reach agreement on matters involving their children. See also *Morris v. Morris*, 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975). When parties reach an agreement, the agreement may be incorporated into a Final Decree and, as such, can be enforced through the contempt power of the Court. See Va. Code § 20-109.1; *Fry v. Schwarting*, 4 Va. App. 173, 179, 355 S.E.2d 342, 345 (1987). In adopting an agreement, as when setting a child support award, the trial court is guided by the principle that the best interest of a child is paramount. See *Watkinson v. Henley*, 13 Va. App. 151, 158-59, 409 S.E.2d 470, 474 (1991).

The Court of Appeals acknowledged three limitations upon the parties' rights to contract regarding child support. The trial court must review an agreement so as to determine that such an agreement is in the best interest of a child; the court cannot be denied the right to modify and enforce a support award; and, the parties cannot contract away a parent's obligation to support a child. See *Shoup*, 37 Va. App. at 250-51, *citing Kelley v. Kelley*, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994); *Featherstone v. Brooks*, 220 Va. 443, 446, 258 S.E.2d 513, 515; *Watkinson*, 13 Va. App. at 157.

Importantly, the Court of Appeals in *Shoup* stated: "Furthermore, while a court may not make an award prospectively, nothing in our case law invalidates a decretal provision reflecting the parties agreement to address and make future modifications of support as circumstances change." 37 Va. App. at 252, *citing Schmidt*, 6 Va. App. at 502.

The concurring opinion in *Shoup* made a helpful distinction in evaluating such child support provisions. It looked closely at the *Shoup* provision to determine whether the provision was self-executing as a means of effectuating the intent of the statutory language in Va. Code § 20-109.1. Judicial intervention would not be needed if the terms of the provision were clear on their face. Thus, the concurrence would approve the *Shoup* provision regarding child care but not the provision in *Shoup* on emancipation because the latter provision looked to other "relevant Virginia statutes and case law" to determine child support. 37 Va. App. at 258. "Relevant statutes and case law," by definition, could not be known at the time the provision was incorporated in a Court order. Note that the mechanical efforts that a party would have to make, namely plugging in figures for day care on a month to month basis, did not affect the concurring opinion that the child care provision was self-executing.

On the other hand, the provision in *Riggins* required the parties to submit the issue of child support upon a child's emancipation to renegotiation between the parties or to the court for adjudication. Whereas the provision in

*Shoup* referred to an ascertainable standard, the child support guidelines or the cost of child care, the *Riggins* provision contained no standard whatsoever.

The Supreme Court in analyzing the *Riggins* provision concluded that because the parties submitted this provision initially to the Court for the Court's approval as an order,

> it logically follows that when the Court said child support could be renegotiated, the Court meant that, upon agreement of the parties, a consent decree could be presented to the Court for entry or, in the event the parties could not reach an agreement, the Court would adjudicate the matter and enter an order reflecting its determination. Further, our conclusion is consistent with the fact that the court did not expressly dispense with the requirement of court approval. Therefore, as was the case with the original negotiation, any renegotiations would be subject to court approval. We think this requirement is implicit in the divorce court's decree.

263 Va. at 448-49.

The Supreme Court in *Riggins* made a very specific finding with regard to the particular language in the *Riggins* Consent Decree. The Court, however, made a general statement as to its views on support provisions noting that "specifying future changes in the amount of child support is inappropriate because it does not allow the divorce court to determine child support based on contemporary circumstances." *Id.* at 448. The Supreme Court in *Riggins* did not refer to Va. Code § 20-109.1 nor did it refer to the *Shoup* decision except in passing in the dissenting opinion. Judge Stanley P. Klein in his letter opinion of November 13, 2002, in the case of *Kaminsky v. Kaminsky*, 60 Va. Cir. 353 (Fairfax County 2002), found this part of the *Riggins* opinion to be *obiter dicta*.

It is not clear to me given the dramatic differences between the *Riggins* and Schacht provision and given that the Supreme Court so carefully analyzed the particular provision in Riggins that I can conclude that the holding in *Riggins* would invalidate the type of provision at issue in *Schacht*.

### The Schacht Provision

The Schacht provision is composed of three parts: a monthly support amount; fifty percent of all raises; and, fifty percent of all bonuses.

At this point in the litigation, both counsel treated raises and bonuses in the same manner. Wife is asking the Court for a lump sum to reflect raises from 1994 to present and a lump sum reflecting bonuses from 1994 to present. Wife is not asking the Court to go back and recompute support at a particular time, whenever it was, when Husband received an increase in his salary.

It seems to me that the terms may reflect two different types of support increases at least in terms of how the increase would be realized. The parties themselves appear to have understood this difference in practice.

## A. *Are the terms of the provision ambiguous?*

Husband is arguing that the terms "raises" and "bonuses" are not clear. For instance, Mr. Byrd argues that "raises" should not include increases in salary that were realized when Mr. Schacht changed his position. He argues that "bonuses" should not include monies realized from a deferred compensation award or that came from the exercise of stock options.

On the face of the document, the phrase "raises and bonuses" does not strike one as ambiguous. The Court looks for guidance to an analogous situation in *Smith v. Smith*, 3 Va. App. 510, 351 S.E.2d 593 (1986). In that case, husband promised to pay wife a certain amount of spousal support which was to be offset by cash distributions paid to wife by husband from various partnerships. The amounts to be paid through the partnerships was governed by assignments that stated: "Beneficiary [Wife] shall be entitled to receive all cash contributions earned or accrued in respect to the Beneficial Partnership interest, at such time as such cash distributions are actually paid to the Declarant by the . . . Partnership. . . ." The husband in the *Smith* case withheld some monies arguing that certain types of cash distributions were not subject to the assignments. *Id.* at 515.

In limiting payments, husband wanted to further define the words "earned" and "accrued." For instance, he said the term applied to "profits" only. He argued that the terms "should not be construed to encompass distributions of capital generally." *Id.*

The trial court in *Smith* found the terms to be unambiguous as did the Court of Appeals. The Court of Appeals did not get bogged down in accounting details and looked to the fact that once the funds were earned by Mr. Smith, they became cash distributions. Mrs. Smith's "interest attaches by operation of the Assignment instruments without regard to the manner in which Mr. Smith is required to account to the taxing authority." *Id.* The Court noted that there was no limiting language in the instruments themselves.

So too in *Schacht* there may be fine points and distinctions with regard to the exercise of stock options. But the fact is that Mr. Schacht in various years received cash from stock options as well as from other sources. These amounts are readily ascertainable and agreed upon by counsel. The complexities raised by Mr. West are a type of red herring, akin to the complexities raised by Mr. Smith. Resp't. Ex. 7.

Typically, in a contract action the parties can present parol evidence if a term is deemed ambiguous. In the July hearing, both parties were free to do so. Wife did not testify at all as to what she had in mind when the PSA was negotiated. Husband testified in a conclusory fashion that he did not intend the phrase to mean what Wife was contending. Neither party testified as to how the terms were arrived at; nor did Husband give examples of what he thought did apply. It appears that Husband just thought he was paying too much altogether. See Complainant's Ex. 8 & 9; Resp't. Ex. 4.

Mr. Schacht does not appear to have ever provided his ex-wife with concrete documentation as to what his financial situation was, despite Mrs. Schacht's request that he do so. Resp't. Ex. 2 & 3. Mr. Schacht denied receiving any bonuses in 1995. Resp't. Ex. 3. In 1995, he received a profit share distribution of $36,616. Resp't. Ex. 7. It appears that in 1996, he provided her with a chart as to a purported salary increase, but the figures on the chart do not bear any resemblance to any figure I can find on the applicable tax return for that year. Complainant's Ex. 6C.

In conclusion, the Court cannot extract useful information as to the concrete meaning of "raises and bonuses" either from the testimony of the parties or their actions. The Court relies on its initial determination that the terms are not ambiguous, and as such the Court is entitled to rely upon the dictionary definitions presented by Mr. Byrd.

"Raise . . . 3: An increase in amount: as a: an increase of a bet or bid, b: an increase in wages or salary. . . ." *Merriam-Webster's Online Collegiate Dictionary* (last visited July 30, 2002) <http://www.m-w.com/cgi-bin/dictionary>.

"Bonus — something in addition to what is expected or strictly due: as (a) money or an equivalent given in addition to an employee's usual compensation, (b) a premium (as of stock) given by a corporation to a purchaser of its securities, to a promoter, or to an employee. . . ." *Id.*

## B. *Is the suggested application of the provision ambiguous?*

It is not clear upon reading the provision whether the payment of raises versus the payment of bonuses is to be treated differently. Do increased

payments commence immediately upon receipt of a bonus or raise or is it an annual computation? The PSA is silent as to these issues. The means of collection is ambiguous. The parties carried out the provision in a common sense fashion and this is evidence before the Court. They looked to adjust support annually or at least they attempted to do so in 1995 and 1996. They refer to an annual obligation in the 1998 Amendment. Complainant's Ex. 5D. They used increases in salary to adjust the base monthly support amount. They treated bonuses as an opportunity for a lump sum distribution, in the form of a computer and a baby grand piano. The practice of the parties removes the ambiguity in the provision itself.

## C. *Is the provision self-executing?*

In the Schacht PSA, the parties established a monthly support amount that is increased by raises and bonuses received by Husband.

It appears that the provision with regard to bonuses constitutes an added gift to the children so to speak and is consistent with the testimony of Wife that the parties wished their child to be held harmless from the effects of divorce. The parties wished their children to benefit from their parents' affluence beyond what Virginia law would mandate. This spirit of generosity on Husband's part is consistent with other provisions in the PSA; for instance, the extension of a support obligation far beyond the youngest child's emancipation and the separate promise to pay for the children's college expenses. It seems to me that Va. Code § 20-109.1 would allow the parents to make such an agreement and that the provision should be recognized as evidence of Husband's generosity at the time he signed the PSA. See *Conway v. Conway* 10 Va. App. 653, 658, 395 S.E.2d 464, 467 (1990).

One could argue that the Husband was guided by the same principle when he agreed to hand over fifty percent of his raises without reference to Wife's financial condition.

The Schacht provision bears more resemblance to the child care provision in *Shoup* than it does to the Shoup emancipation provision. It is a formula that requires the parties to do no calculation except to plug in the numbers. It bears no resemblance to the *Riggins* provision which required only that the parties negotiate or go to Court. It establishes a mechanism for support that, in the absence of a Court modification, allows support payments to increase but not decrease. The concurrence in *Shoup* could be describing this provision as well as the *Shoup* child care provision, when it states:

> While this adjustment provision is plainly self-executing, the salient reason it meets muster is that a court does not employ guesswork to decide if this method of future adjustment is in the best interests of the children when entering the decree, which incorporates the agreement.

37 Va. App. at 258.

D. *What is the effect of the parties' agreements and amendments?*

Wife's goal in proceeding on the Rule is to establish an arrearage amount. Husband made payments of sorts to carry out his obligation under the PSA and the Decree. As is clear from the exhibits, he did not pay the full amount required by the Decree. These lesser payments cannot be construed as an accord and satisfaction since there is no evidence that the Wife accepted the payment with an "intelligent appreciation of its possible consequences, coupled with knowledge of all relevant facts." *Mercury Ins. Co. v. Griffith*, 178 Va. 9, 20, 16 S.E.2d 312, 316 (1941). See also Va. Code § 8.3A-311.

As non-conforming payments, they "impermissibly modified the underlying obligation." *Gallagher v. Gallagher*, 35 Va. App. 470, 478, 546 S.E.2d 222, 226 (2001). These payments do not fall within the exception carried out by *Miederhoff v. Miederhoff*, 38 Va. App. 366, 564 S.E.2d 156 (2002).

## Conclusion

I am not finding the Complainant in contempt, but I am finding that he owes the Respondent arrearages as determined by Mr. Byrd with one exception. Moving expenses are not to be included as part of a bonus. The calculation of arrearages has been done properly pursuant to the arrearage provision in the PSA and Decree. I ask Mr. Byrd to recalculate arrearages given my ruling on moving expenses. Mr. Schacht is to receive credit for the amounts he has paid from his raises and bonuses.

This letter opinion addresses only the Rule to Show Cause. The Petition for modification was filed on October 4, 2001. Judge Smith sustained a demurrer to that Petition holding that the emancipation of a child cannot constitute a change of circumstances given the unique nature of the Schacht support provision. I agree with Judge Smith. I also agree that the support provision in Schacht can be modified as to that time period when at least one child is a minor provided a proper change of circumstances is alleged.

Subsequent to the filing of the Motion, Husband was put on notice of his termination from his employment. At the time of the July hearing, the company for whom he had worked was literally closing its doors. While this case was under advisement, counsel notified me that the Husband had found new employment. I am requesting Mr. West to tell me via new pleadings what he is asking the Court to do at this point. Mr. Byrd should answer any new pleadings filed, and we can then put the matter down for a hearing.

Counsel has represented to me that they will probably appeal this ruling and may appeal a ruling on the Motion should a modification be argued. Mr. Byrd may submit an order with regard to this Rule or may wait and submit an order with regard to both the Rule and the Motion when both matters are resolved.