**Arlington**

PAUL F. ACREE

v.

BRENDA E. ACREE

No. 0200-85

Decided April 1, 1986

COUNSEL

E. Robert Giammittorio (Delaney & Giammittorio, on brief), for appellant.

No brief or argument for Brenda E. Acree, appellee.

OPINION

**DUFF, J.**—The issue in this appeal is whether a parent is entitled to credit for nonconforming child support payments when he has, by agreement of the parties, assumed physical custody and total responsibility for the support of the child, but has obtained no modification of the decree. The trial court was of the opinion that the husband was not entitled to credit and awarded the wife a judgment for the full amount of the arrearage. Because of the unique facts of this case, we are of the opinion that the judgment of the trial court must be reversed.

I.

Paul F. Acree (husband) and Brenda E. Acree (wife) were divorced by a final decree entered on December 5, 1978. A property settlement agreement executed by the parties was incorporated and confirmed in the final decree. As part of that agreement, the husband was awarded custody of the couple's son, and the wife was awarded custody of their three daughters. The agreement re-

quired the husband to pay to the wife $33.33 per week for each of the three girls. The wife was not required to make payments to the husband for the support of her son.

Subsequently, by agreement of the parties, one daughter, Theresa Gail Acree, went to live permanently with her father. It is undisputed that this change of Theresa's custody *was by agreement* between the husband and the wife. Their agreement further provided that the husband would suspend the payment to the wife of $33.33 per week child support for Theresa. Neither party, however, moved to modify the divorce decree to reflect their agreement. The husband assumed physical custody and total responsibility for the support and care of Theresa until she became emancipated.

In 1984, Mr. Acree had a heart attack. During his illness, he fell behind in the child support payments for his daughter Brenda Michelle Acree, who was still a minor and living with the wife. At that time, the wife filed a motion for enforcement of the child support provisions of the 1978 decree, claiming the arrearages due for Brenda and for Theresa for the years she lived with her father pursuant to the parties' agreement. After an *ore tenus* hearing and submission of legal memoranda, the trial court found in favor of the wife and entered judgment against the husband for the arrearages for the support of Brenda and Theresa. The court denied the husband's request that he be given credit for a portion of the arrearage during the time he had assumed custody of Theresa and provided for her total support. This appeal followed.

## II.

The wife argued in the trial court that her right to the support payments for Theresa became vested when due and that to allow the husband credit for payments during the years when Theresa lived with him would be to modify, without the court's approval, the terms of the final decree regarding the method of payment. She relies on the holdings in *Fearon* v. *Fearon,* 207 Va. 927, 154 S.E.2d 165 (1967); *Cofer* v. *Cofer,* 205 Va. 834, 140 S.E.2d 663 (1965); and *Newton* v. *Newton,* 202 Va. 515, 118 S.E.2d 656 (1961).

The husband acknowledges the holdings of these cases, but he contends that they can each be distinguished on the facts. He ar-

gued that none of the cited cases dealt with an agreement for a *permanent* change of custody where the obligated spouse assumed total responsibility for the support of the child, until emancipation of that child, thereby satisfying the purpose of the support provision of the divorce decree without detriment to the child or the other spouse. He contends that *Carper* v. *Carper,* 228 Va. 185, 319 S.E.2d 766 (1984) lends support to his position that, because he assumed total responsibility for the support of the child, the purpose of the support provision in the decree was fulfilled. He further contends that to uphold the chancellor's decision would result in unjust enrichment of the wife and shock the conscience of the average person, citing *Isler* v. *Isler,* 425 N.E.2d 667, 669 (Ind. Ct. App. 1981). Finally, he asserts that he is not attempting to modify any provision of the decree and that the support called for in the decree has been more than paid.

In *Newton,* 202 Va. 515, 118 S.E.2d 656, the husband answered the wife's petition for arrearages, contending that he made overpayments to the wife, and seeking a setoff or credit against the amount allegedly due. He also denied the wife's right to relief on the ground that she had refused him visitation with his daughter. In denying the husband credit, the supreme court held that the payments were for the benefit of the child and that the husband could not vary the terms of the decree to suit his convenience. *Id.* at 519, 118 S.E.2d at 659. The court further held that to permit him to increase the amounts paid at one time and to reduce them at another would cause turmoil and might result in hardship to the child, "as [was] obvious in the present case." *Id.* We note that the action of the husband in the *Newton* case was taken without the consent or agreement of the wife.

In *Cofer,* 205 Va. 834, 140 S.E.2d 663, the court held that the trial court lacked authority to relieve a delinquent husband of the obligation to pay accrued installments for the support of his children due under the provisions of a former decree or order. The husband had moved the court to relieve him of the obligation to pay the arrearage on the grounds that his former wife had moved with the children to Pennsylvania, making his visitation more expensive; that he had remarried; and that his income had been reduced. *Id.* at 835, 140 S.E.2d at 664. What distinguishes *Cofer* from the case at bar is the fact that the husband in *Cofer* requested that he be relieved of the obligation to pay support. The

husband in the present case has not asked to be relieved of his obligation to pay support, but has asked that he be given credit for having fulfilled his support obligation to Theresa, with the concurrence of his wife, in a manner other than as directed by the decree.

In *Fearon,* 207 Va. 927, 154 S.E.2d 165, the husband was ordered to pay a lump sum periodically to the wife for the support and maintenance of herself and their two children, who were in her custody. He unilaterally made substantial support payments directly to the children or to others for the children's benefit, and later sought credit for these payments against the unitary sum he had been ordered to pay to the wife. In denying him credit, the court noted that "[t]he decree did not apportion among them the amount awarded. The object of such a decree is to provide the divorced wife with funds so that she can provide a home and support for herself and the children." *Id.* at 931-32, 154 S.E.2d at 168. The evidence showed that the wife, although deprived of these funds, continued to maintain a home for the children. The court regarded the payments made by the husband directly to the children and others as gifts and gratuities and refused to credit them to his obligation to pay the wife.

### III.

These cases do not address the status of the husband's obligation where there is an unequivocal agreement between the parties that: permanently alters the custody of the child; provides that support for the child no longer be paid to the wife; and where that agreement has been fully performed at the time the wife petitioned the court for the arrearage.

In *Carper* v. *Carper,* 228 Va. 185, 319 S.E.2d 766 (1984), the husband was ordered to "make the mortgage payments on the house" and to pay to the wife $165 each payday for her support and maintenance and that of the children. Thereafter, the husband filed suit for partition of the former marital home. This suit was settled by conveying the property to the wife's parents, who assumed the mortgage, paid the husband for his share of the equity in the property, and rented the house to the wife for $150 a month. The wife sought a judgment against him for the amount of the payments and also petitioned for an increase in support. She

contended that the provision ordering the husband to pay the mortgage could only be construed as an order for child and spousal support. She relied on *Newton, Cofer,* and *Richardson* v. *Moore,* 217 Va. 422, 229 S.E.2d 864 (1976), in arguing that her right to the mortgage payments was vested when each payment became due; that the husband could only be relieved of his obligation to make these payments by petitioning the court for a modification; and that the court had no authority to modify the order retroactively since each payment was vested as it became due. The court assumed, without deciding, that the mortgage payment provision of the decree constituted an order for support. Nevertheless, the court held that the husband had fully complied with the terms of the decree. Mr. Justice Russell, writing for a unanimous court observed:

> When Leo, *with Lelia's acquiescence,* conveyed the property to her parents, an *arrangement* was reached whereby the new owners took over the burden of the mortgage payments by express covenant. This fulfilled the *purpose of the mortgage payment requirement.* Its effect was the same as if Leo had arranged for the payment of the mortgage out of other assets of his own.

*Id.* at 189, 319 S.E.2d at 769 (emphasis added).

In *Carper,* as in the present case, the support provision was not breached when the parties, by agreement, made a different, although equally effective, arrangement to fulfill the purpose of the decree. The husband argues that the undisputed agreement with his wife, whereby he assumed permanent custody and total responsibility for the support of Theresa, had the effect of fully satisfying his support obligation under the divorce decree.

Because there is no case in Virginia directly on point, the husband argues that *Isler,* 425 N.E.2d 667 (Ind. Ct. App. 1981) should be considered in support of his view. The court in *Isler* recognized that generally, the law in Indiana does not allow credit for nonconforming support payments. The purpose for this rule is to promote consistency in enforcement of orders and to avoid continuous trouble and turmoil. 425 N.E.2d at 668. The court determined, however, that a relaxation of this inflexible rule might be warranted under certain circumstances to prevent unjust enrichment. The court concluded:

We are of the opinion that a narrow exception to the rule may exist in a case where the obligated parent, by agreement with the custodial parent, has taken the child or children into his or her home, has assumed custody of them, has provided them with food, clothing, shelter, medical attention, and school supplies, and has exercised parental control over their activities and education for such an extended period of time that a permanent change of custody is demonstrated. In such a case, the court may, in its sound discretion, allow credit against the accrued support for the reason that the obligated parent has merely furnished support in a different manner under circumstances easily susceptible of proof. Such a result would be equitable, and would not conflict with the holdings of the reported cases.

425 N.E.2d at 670.

We have carefully considered Mr. Acree's arguments in the light of prior Virginia decisions. We find no case that has denied the relief he requests under facts similar to those that he has presented. The cases that apply a seemingly inflexible rule denying credit for nonconforming support payments involve expenditures made during short visits or vacations, gifts, clothing, or direct payments in cash to the child, payments to an educational institution for the child's benefit, and overpayments made to the wife. The rationale for denying relief under those circumstances has been the avoidance of continuous trouble and turmoil. In each of the instances cited, to grant relief would result in some detriment to the custodial parent and child for whose benefit the support was to be paid. *Fearon,* 207 Va. at 931-32, 154 S.E.2d at 168; *Newton,* 202 Va. at 519, 118 S.E.2d at 659.

Where, however, the custodial parent has by his or her own volition entered into an agreement to relinquish custody on a *permanent* basis and has further agreed to the elimination of support payments and *such agreement has been fully performed,* we hold that the purpose to be served by application of an inflexible rule denying credit for nonconforming payments is outweighed by the equities involved. Under the court's reasoning in *Carper,* the purpose of the support decree in this case has been fulfilled.

Under the circumstances of this case, we do not view the relaxation of the general rule denying credit for nonconforming support

payments to be in conflict with the holdings of the Virginia Supreme Court. We simply refuse to reward an individual who seeks to take advantage of an agreement entered into freely and voluntarily, after it had been fully performed to her benefit. By assuming physical custody and total responsibility for the support of the child, the husband fulfilled his obligation under the decree. He did not stop support payments unilaterally to suit his convenience. To enforce the letter of the decree after its purpose has been served and the parties' agreement fully performed would unjustly enrich the wife and shock the conscience of the average person. Most important, failure to enforce the letter of this decree under these circumstances will not work to the detriment of the child, for whose benefit the support was to be paid. The agreement of the parties as carried out worked to the benefit of the child to the same degree that absolute conformity with the terms of the decree would have. No beneficial purpose would now be served by awarding arrearages for the support of Theresa.

For these reasons, the judgment appealed from is reversed.

*Reversed.*

Benton, J., and Cole, J., concurred.