## CIRCUIT COURT OF THE CITY OF WINCHESTER

Winchester Medical Center, Inc.

v.

Grover Giffin, Sr.

September 29, 1987

Case No. 85-L-56

By JUDGE ROBERT K. WOLTZ

The issue in this case is the legal obligation of a father, who is under court order to supply support for an infant child, to a creditor who has supplied a necessary to that child. The essential facts are stipulated. The precise issue seems never to have been decided in this jurisdiction.

The child was the legitimate, unmarried and otherwise unemancipated offspring of the defendant and his former wife. The parents were divorced in 1975 and the matter referred to the juvenile and domestic relations district court for future considerations on custody and support under Code § 20-79(c). In 1977 the district court awarded the child to the mother and the defendant was ordered to pay medical expenses in excess of a monthly figure but not otherwise ordered to pay support for the children including this child. In 1984 that court ordered the defendant to pay a weekly sum toward the support of the children. The defendant in those proceedings specifically raised the issue of medical costs for this child because of rumor she was pregnant; the mother specifically denied

the pregnancy. In addition to decreeing cash payment for support this order provided, "Defendant, father, agrees to continue to [sic] major medical and hospital insurance coverage to benefit children thru his place of employment. This shall be his *sole* responsibility for medical expenses." (Emphasis in original.) Defendant complied with this provision of the Order.

Slightly over three months later the child who was then seventeen and a half years old and had previously lived with her father but not for over two years was taken to the plaintiff hospital by her mother to be delivered of a child. The mother signed the hospital admission form assuming responsibility for the cost of services and provided the hospital with information concerning hospital insurance carried by the father.

The baby was born and about three weeks later the child left her mother's home to reside with the acknowledged father of the newborn infant. The hospital's charges for services were something over nine hundred fifteen dollars and claim was filed with the insurance carrier. The carrier denied coverage on the basis that the policy afforded maternity benefits only to a spouse, not to an insured's child. Not receiving payment, the plaintiff hospital sued the father, the mother, and their child in the general district court recovering judgment against the latter two who did not contest the action but not against the father as a result of which this appeal was taken.

As pointed out in the excellent briefs of the parties, citing 7 A.L.R.2d 491, there is a distinct split of authority on the issue involved here. In Blackstone, I Commentaries on the Laws of England, ch. 16 (facsimile 1765 ed.) the author sets forth the common law duties of parents to legitimate children. The author states that these duties "principally consist in three particulars; their maintenance, their protection, and their education." While he speaks of parents, it is clear from his subsequent discussion that he is speaking primarily of the father and that the duty of maintenance generally encompasses what are known as "necessaries." There is no dispute in this case and there could hardly be one that the obstetrical services supplied by the hospital to the minor child were a necessary.

Until fairly recent years our cases continued to hold to a common law duty on the part of the father to supply minor children with necessaries. *See, e.g.,* *White v. White*, 181 Va. 162 (1943). Commencing with our Married Woman's Act of 1876-77, the legal status of women as to their rights and responsibilities has undergone great change from the common law. This metamorphosis has been in the last twenty or so years at full canter resulting from the responsiveness by legislatures, both state and federal, to social attitudes toward and economic competence of women. As a result the father is no longer principally saddled with the responsibility of child support. By our statutes, for example, Code §§ 16.1-279(F), 20-61, 20-103, and 20-107.2, parents in general are made liable for support of minor children either expressly or by strongest implication. Of course to what extent either or both parents are liable for the support depends on their respective resources and other factors such as those set out in Section 20-107.2, subsection 2. There is nothing in the record here to show the factors relevant to the mother's ability to supply child support.

The first contention of the defendant father is that the general district court and as a consequence this court on appeal from the former has no jurisdiction. He asserts that in this instance original jurisdiction would lie in the juvenile and domestic relations district court. There is no merit to this contention. This is a contract action asserted by a third party. The statutes do not confer jurisdiction in such instances on the latter court, but they do on the general district court.

On the merits the father's principal defense is that the court order is determinative of his liability for support, most particularly as to medical expenses where the order expressly sets forth his obligation in that regard. The hospital maintains that such a result would be inequitable, that this result would bind it as a third party creditor to an order in a proceeding to which it was not a party and finally in the event of its favorable judgment against the father he is at liberty to pursue the mother on the basis of her agreement to pay the charges she agreed by contract to pay; this last I take it is on some theory of subrogation. Under

the particular circumstances of this case, I conclude that the hospital has no right to recover from the father.

In *Mihalcoe v. Holub*, 130 Va. 425 (1921), the maternal grandmother and uncles of minor children sued the father in assumpsit for board and lodging expenses for his separated wife and children who were living with plaintiffs. Acknowledging that a father owes a legal duty to support his minor children the court noted at page 430, "Where the child is living away from the father, the question of his liability will depend on the circumstances of the case." The case further sustains the authority of the mother who has custody or the children themselves to place the credit of the father as a necessary incident to his legal duty of support. This case is not determinative of the issue at hand, but its statements are relevant. Here it is notable that neither the mother nor the child sought to pledge the credit of the father. The mother who is equally liable in principle but not necessarily in amount for support of the child instead pledged her own credit for the benefit of the minor. She supplied to the hospital not his name but that of his insurance carrier. As to the hospital the facts show that in extending its services to the child it was relying on the undertaking of the mother to pay and on the existence of hospital insurance. That its reliance on the latter was misplaced and that no reliance on his credit should not now redound unfavorably to the father.

Additionally great weight must be given to the order of the juvenile and domestic relations court. In *Fearon v. Fearon*, 207 Va. 927, 931-932 (1967), a father who was obligated by divorce decree to make support payments made gratuitous payments to his children and to others for their benefit. He sought credit for such payments against the unapportioned support award which had been decreed in favor of wife and children. The court stated, "The object of such a decree is to provide the divorced wife with funds so that she can provide a home and support for herself and the children." The father was denied credit for his gratuitous payments. *But cf. Acree v. Acree*, 2 Va. App. 151 (1986), where a contrary result was reached under quite different factual circumstances. If a father obligated by a support order who pays money to or for the support of his children outside the provisions of

that order cannot receive credit against those mandatory payments, the question arises whether a father who complies with the terms of the support order expressly covering his obligation for medical expenses should be held liable over and beyond the terms of the support order.

The case of *Bear v. Bear*, 131 Va. 47 (1921), is indicative that education can be a necessary. I concede that some necessaries are "more necessary" than others. Hospital obstetrical services to a minor child are likely among the highest order of necessaries. By analogy, nevertheless, it strains reason to say that where education is a necessary an educational institution could hold liable a father for his child's tuition and other charges where the support order against him makes no mention of his liability for educational expenses. Even more positively, getting closer to the case at hand, if the support order expressly required him to supply an education limited in amount or circumstance, he should not be held liable for the expenses of education in excess of the order.

There is a sound reason for generally limiting a parent's support obligation to that provided for in some order for the purpose. Defendant in his memorandum sets out the following quote from *Karminski v. Karminski*, 23 N.Y.S.2d 141 (1940), as follows:

> Any other rule would invite constant squabbles over alleged extra expenditures for the support and maintenance of children of divorced parties, where the court had already fixed a sum for such support.

Any changes in child support provisions are better served by proceedings for that purpose than by independent actions instituted by ostensible third party creditors.

The hospital maintains that it should not be foreclosed from recovery by the terms of an order in a case to which it was not a party and of which it had no notice. The question is not whether the hospital is bound by the support order but rather whether this father has an obligation to the hospital outside of and beyond the judicially sanctioned child support duties contained in the order. Though no support order was involved, *Buxton v. Bishop*, 185 Va. 1 (1946), is authority that as parent under his

common law obligation for support is not always responsible for necessaries supplied his child by a third party. There a hospital supplied extremely necessary services to an emancipated son of the defendant. The defendant has made no contract to pay for the services and decision was he had no liability for the necessaries of his emancipated child. Thus a third party extending credit to a minor for necessities has no automatic or vested right in all circumstances to enforce reimbursement against a parent.

It is unnecessary here to make a broad rule that a support order or decree *ipso facto* and *ex proprio vigore* absolves in all circumstances a parent from his common law liability to third parties for the value of necessaries supplied by the party to the parent's minor child. But under the circumstances of this case I hold that the defendant is so absolved from any liability for the value of services rendered his minor child by the hospital.