455 S.E.2d 752

**Alice E. BUXBAUM**

v.

**Stuart BUXBAUM.**

**Record No. 1174–94–1.**

Court of Appeals of Virginia,
Norfolk.

April 11, 1995.

William B. Smith, Virginia Beach (Fine, Fine, Legum & Fine, on briefs), for appellant.

Stanley G. Barr, Jr., Norfolk (Megan E. Burns, Kaufman & Canoles, on brief), for appellee.

Present: Judges BAKER, BENTON and BRAY, JJ.

182

BENTON, Judge.

In this appeal, Alice E. Buxbaum contends the trial judge erred when he ruled that her former husband was not in civil contempt. The trial judge found that Stuart Buxbaum had satisfied his obligation to pay spousal support under a property settlement agreement. For the reasons that follow, we reverse the trial judge's finding that the husband had satisfied his support obligation.

At the evidentiary hearing on the wife's contempt motion, counsel for both parties made representations concerning the facts. None of the facts are in dispute. The record establishes that the parties entered into a property settlement agreement in 1982. The agreement was affirmed, ratified, and incorporated into the final divorce decree that was entered August 7, 1985. It contained the following provisions for spousal and child support:

## ARTICLE IV—SUPPORT AND MAINTENANCE FOR WIFE

The husband agrees to pay unto the wife the sum of $2,625.00 per month for spousal support and maintenance, said sum commencing upon the first day of the month following the execution of this agreement subject to the following conditions:

a. This paragraph cannot be modified prior to the third anniversary of this agreement.

b. After the third anniversary of this agreement spousal support may be modified if husband's income drops below $70,000.00 per year.

c. Spousal support shall terminate upon the death of either party, upon the remarriage of wife or upon the thirteenth anniversary of this agreement, whichever event shall first occur.

## ARTICLE V—CHILD SUPPORT

The husband agrees to pay the sum of $75.00 per month for the support of Edward Buxbaum, $100.00 per month for

the support of Susan Buxbaum, $100.00 per month for the support of Margie Buxbaum and $600.00 per month for the support of Jonathan Buxbaum, all of whom are children of the marriage, until such time as each child shall reach the age of 21 years or is sooner emancipated. In the event, however, that a child or children are over the age of 21 years but is still attending college and/or pursuing post-college educations, then and in that event, the above sums as indicated for that child or children shall continue until his or her education has been completed.

The parties' counsel informed the trial judge that when the agreement was executed, Margie was living with the husband with the wife's consent. The husband's payment to the wife included, however, $100 per month that was designated in the agreement as support for Margie. He continued those payments for two years and then reduced his payment to the wife by $100 per month without any objection. This change reduced the total monthly spousal and child support payments from $3,500 to $3,400.

Edward graduated from college in 1985. The wife asked the husband to continue making the payments of $75 per month that had been designated for Edward's support because she needed the money. The husband agreed to do so and continued the payments until April 1993.

Susan graduated from college in 1986. As she had done in 1985, the wife informed the husband that she needed money and asked him to continue paying $100 per month that was designated in the agreement as support for Susan. He did so until April 1993.

Although the parties agreed in 1987 that the husband would have permanent physical custody of Jonathan, the husband continued to send to the wife $600 per month which was designated in the agreement as child support payments for Jonathan. He stopped that payment in April 1993.

The parties' counsel represented to the trial judge that the parties had no express agreement, written or oral, that these payments were made by the husband to the wife or accepted

by the wife as credits for the husband's spousal support obligation. They also represented that the husband did not deduct any of the non-obligatory payments as alimony on his tax returns and that the wife did not include these payments as income on her tax returns.

By letter dated August 18, 1993, the husband notified the wife that because of financial circumstances his income had been drastically reduced. He stated that he would discontinue spousal support payments to her after September 8, 1993 because of his belief that he had satisfied his support obligation to her. The parties stipulated that the total payments that the husband made to the wife exceeded by $575 the total amount the husband would have been obligated to pay her under the agreement.

Relying upon *Acree v. Acree*, 2 Va.App. 151, 342 S.E.2d 68 (1986), the trial judge ruled that "the purpose of applying an inflexible rule here is outweighed by the equities involved, and ... to award [the wife] continuing monies until the termination of the contract would unjustly enrich her and would ..., again, probably shock the conscience of the average man." Thus, the trial judge found that the husband had discharged his support obligations. This appeal followed.

"A spouse ordered to pay support 'must pay "according to the terms of the decree ..." [and] payments [made in excess of the amount ordered are] gifts or gratuities and cannot be credited to his obligation to pay the support award.'" *Sanford v. Sanford*, 19 Va.App. 241, 246–47, 450 S.E.2d 185, 189 (1994) (citations omitted). Indeed, the Supreme Court has stated that " 'even a court of equity, in an effort to do equity, cannot disregard the provisions of a lawful decree, nor is such a court justified in offsetting against payments required to be made under such a decree voluntary payments.'" *Fearon v. Fearon*, 207 Va. 927, 931, 154 S.E.2d 165, 168 (1967) (citation omitted).

The payments the husband voluntarily agreed to continue were designated in the agreement as child support. Moreover, the parties stipulated that they did not have an agree-

ment that the payments were to be viewed as prepayment of the spousal support obligation. In argument before the trial judge, counsel for both parties agreed that "[t]here was never a statement made to [the wife], I'm continuing these child support payments to you but you understand that this is a prepayment of my spousal support obligation."

In *Acree*, this Court held that a parent was entitled to a credit for child support payments when the parties agreed to nonconforming child support payments that varied the terms of a decree. Without seeking an order to change the terms of the agreement which was incorporated into their final divorce decree, the parties in *Acree* entered into an "unequivocal agreement" that the mother, the custodial parent designated by the decree, would relinquish permanent custody of the child to the father and that the father would rear the child in lieu of paying to the mother support for that child. 2 Va.App. at 155, 342 S.E.2d at 70. After the father had fully performed the agreement and the child was emancipated, the mother sought to recover payments due under the decree. Because their oral agreement was unambiguous and unequivocal, this Court held that "the purpose to be served by application of an inflexible rule denying credit for nonconforming [child support] payments is outweighed by the equities involved." *Id.* at 157, 342 S.E.2d at 71.

Unlike *Acree*, the parties in this case had no unequivocal agreement. The parties never agreed that the additional payments under the terms of the child support agreement were to be applied to future spousal support payments. Furthermore, the evidence does not support a conclusion that the wife accepted the additional payments as an advance on future spousal support payments. The stipulated evidence only supports the conclusion that the wife needed money and the husband agreed to continue the amounts designated as child support. Indeed, the parties agree that no understanding was reached by the parties, and no discussion was had concerning the effect of the continued payment.

Because the husband agreed to continue the payments and was not compelled to do so, he could have ceased making the non-obligatory payments at any time. Indeed, he unilaterally ceased making those payments in April 1993. Absent a specific, mutual agreement by the parties, "[s]upport payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities." *Sanford*, 19 Va.App. at 248, 450 S.E.2d at 190. Thus, we hold that when the husband ceased making the non-obligatory payments in April 1993, as he was privileged to do, he was required to continue to pay $2,625 per month as spousal support in accordance with the decree.

Accordingly, we reverse the trial judge's order and remand this case to the trial court for proceedings consistent with this opinion.

*Reversed and remanded.*