COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Haley
Argued at Chesapeake, Virginia


WILLIAM M. DRAGAS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No.0919-05-1              JUDGE LARRY G. ELDER
                                                       NOVEMBER 29, 2005
LINDA R. DRAGAS


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Louis G. Paulson (Elias William Paulson; John I. Paulson; Paulson &
Paulson, P.L.C., on brief), for appellant.

Debra C. Albiston (Cynthia A. King; Kaufman & Canoles, P.C., on
brief), for appellee.


William M. Dragas (husband) appeals from a decision finding that he failed to comply

with numerous terms of a decree that granted him a divorce from Linda R. Dragas (wife) and

incorporated the parties' settlement agreement, which included spousal and child support

provisions.  On appeal, husband contends that his child support obligation was automatically

reduced as each child became emancipated and that he was entitled to significant credit for

various payments he made for wife and the children above the amounts required by the

agreement.  We hold the provision of the settlement agreement regarding terminating child

support for each child who reached the age of majority was not a self-executing provision and

that husband was not entitled to reduce his support payments without seeking entry of a proper

order.  We hold further that husband was not entitled to credit for overpayments made under the

settlement agreement and other gratuitous payments to wife for the benefit of her and the

_____
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

children.  Next, we conclude the trial court did not err in holding husband responsible pursuant to the agreement for certain maintenance expenses for the marital residence and in requiring husband to return to wife inheritance money she invested in a business owned by him and his family.  Further, we hold the evidence established husband was in breach of a provision requiring him to deposit certain sums into an educational account for the parties' youngest child.  Finally, we hold the evidence supported a finding that wife was entitled to an award of attorney's fees under the terms of the parties' agreement.  Thus, we affirm the trial court's ruling.  We also grant wife's request for an award of attorney's fees and costs incurred in this appeal and remand to the trial court for a determination of the amount of those fees and costs.[1]

## I.  BACKGROUND

The parties were married in 1976 and separated in 1992.  Four children were born of the marriage, and the parties agreed to be financially responsible for a fifth child.  Husband had a successful construction business, and the parties "had a nice lifestyle" during their marriage.

On October 30, 1992, the parties executed a separation agreement covering custody, child and spousal support, and property settlement.  Wife then hired an attorney who used the agreement as a base to draft a more comprehensive agreement, which the parties executed on December 1, 1992.  The agreement was affirmed, ratified, and incorporated into decrees of January 19 and September 30, 1993.

From 1992 through 1997, husband paid in accordance with the agreement, except that he failed to fund educational accounts for the children as required by the agreement.  It was also

_____

[1] Wife also objects to husband's inclusion of her deposition in the record on appeal.  Wife seeks an order excluding the deposition from the record and requiring husband to bear the costs of including the deposition in the appendix.  The record confirms that wife's deposition was never admitted into evidence in the trial court and is not properly part of the record on appeal.  See Rules 4.7(f), 5A:7(a).  Thus, we grant wife's motion to exclude the deposition from the record and order husband to bear the costs of producing the 63-page deposition as part of the appendix on appeal.  See Rule 5A:25.

undisputed that he made substantial additional payments not required by the agreement. In 1998, however, husband unilaterally reduced his child support obligation. Wife testified that she did not agree to that reduction and that she was against it.

In December 2000, husband asked wife to sign a consent decree that provided for a reduction in child support. Wife refused to sign the decree unless it was revised to include the arrearage that accrued following husband's unilateral reduction in support in 1998. The decree was never signed or entered.

In 2001, husband stopped all payments due pursuant to the agreement, including the mortgage, home maintenance, utility, and child and spousal support payments. He also had cut off those utilities that were still in his name. He told wife he would not resume payments until she gave him a letter acknowledging his right to a reduction in child support. In May 2001, wife wrote husband a letter acknowledging his legal right to reduce support with approval of the court. Husband resumed payment of support in the reduced amount but never filed a petition to modify his obligation and never obtained a court order permitting that modification. He also refused to pay various other obligations due under the agreement, claiming a credit for earlier overpayments.

In September 2001, wife filed a petition for a rule to show cause against husband, alleging arrearages in support and various other payments due pursuant to the parties' agreement, including the mortgage, maintenance costs, utilities, and the children's educational funds. She also contended she was entitled pursuant to the agreement to have husband return to her certain inheritance money she received during the marriage. Finally, she sought an award of attorney's fees. The matter was referred to a commissioner in chancery. The commissioner recommended a ruling in wife's favor on all contested issues except part of the maintenance for the marital home, finding that the agreement for maintenance did not include the pool and yard.

Husband filed detailed exceptions. Wife excepted on the ground that the commissioner erred in concluding husband was not responsible for yard and pool expenses as part of his duty to maintain the marital residence. After hearing argument on the exceptions, the chancellor sustained wife's exception, overruled husband's exceptions, and except as required by wife's exception, confirmed the commissioner's recommendations. The commissioner also awarded wife interest on the unpaid sums.

Husband noted this appeal.

## II. ANALYSIS

## A. CHILD SUPPORT ARREARAGE

Husband contends his obligation to provide support for each child terminated automatically under the divorce decree incorporating the settlement agreement as each of the parties' five children reached the age of majority. He cites Shoup v. Shoup, 37 Va. App. 240, 556 S.E.2d 783 (2001) (en banc), Riggins v. O'Brien, 263 Va. 444, 559 S.E.2d 673 (2002), and the 2003 amendments to Code § 20-109.1, see 2003 Va. Acts, ch. 260, in support of this contention. Under the existing law and the language of the parties' agreement as incorporated into the divorce decree, we disagree and affirm the trial court's ruling.

As amended by the General Assembly in 2003, Code § 20-109.1 provides as follows:

> Any court may affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board, or by a separate decree prior to or subsequent to such decree, or in a decree entered in a suit for annulment or separate maintenance, and in a proceeding arising under subsection A 3 or L of § 16.1-241, any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. *Provisions in such agreements for the modification of child support shall be valid and enforceable. Unless otherwise provided for in such agreement or decree incorporating such agreement, such future modifications shall not*

- 4 -

> *require a subsequent court decree. This section shall be subject to the provisions of § 20-108.* Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree. The provisions of this section shall apply to any decree hereinbefore or hereinafter entered affirming, ratifying and incorporating an agreement as provided herein.

2003 Va. Acts, ch. 260 (codified at Code § 20-109.1 (___ Repl. Vol.)) (emphasis added to show language added to statute in 2003). Thus, the legislative change made clear that, despite the implication to the contrary in Riggins, the presumption is that modification of child support based on a settlement agreement incorporated into a decree does not require court approval "[u]nless otherwise provided for in such agreement." See Shoup, 37 Va. App. at 244 n.1, 253-54, 556 S.E.2d at 785 n.1, 789-90 (finding to be self-executing language in agreement that set child support according to statutory guidelines and provided that if any of several enumerated changes in circumstances occurred, "*the parties* shall follow the child support guidelines . . . for determination of child support" (emphasis added)). Assuming without deciding that the 2003 amendments to Code § 20-109.1 would apply to a pre-existing decree incorporating a pre-existing settlement agreement, we hold court approval was required for modification of the amount of child support required to be paid by husband in this case because the parties' agreement itself provided that court approval was required.

"Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987). "Where the agreement is unambiguous, its meaning and effect are questions of law to be determined by the court and the same rules of interpretation applicable to contracts generally apply to these agreements." Henderlite v. Henderlite, 3 Va. App. 539, 541, 351 S.E.2d 913, 913 (1987).

> "The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties."

Tiffany v. Tiffany, 1 Va. App. 11, 16, 332 S.E.2d 796, 799 (1985) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)).

Here, the agreement provides that "Husband shall pay to Wife by deposit to her bank account, as and for periodic child support for the children, the periodic sum of $1,000 weekly on each Friday hereafter, . . . subject to termination and revision as provided by Virginia law." The agreement then refers to "the foregoing terminating contingency of a child's attaining age 18," a terminating contingency "provided by Virginia law," as referenced previously. However, contrary to husband's assertions on brief, the agreement does *not* provide that the amount of support attributable to each child is equal or that support shall be reduced proportionately when a child reaches the age of majority. The child support award is unitary because it does not indicate what portion of the award is for each child, and the agreement provides no mechanism *for use by the parties* to determine how much support is due upon the occurrence of "the terminating contingency of a child's attaining age 18." To the contrary, the agreement clearly states that "when either party seeks a modification"--which necessarily includes a "termination" or "revision"--"*the court* is required to presume that the support payments dictated by Code [§ 20-108.2] are the correct amounts to be awarded." (Emphasis added). Finally, the agreement provides that the termination of *spousal* support shall be "automatic" upon the occurrence of either of two "terminating contingenc[ies]." In contrast, the agreement does *not* refer to the "terminating contingency of a child's attaining age 18" as an "automatic" one. Construing these contractual provisions in harmony compels the conclusion that the agreement requires court approval for modifications of child support.

- 6 -

Because husband did not obtain court approval before terminating support, the trial court did not err in holding husband was in violation of the agreement.

## B.  SUPPORT ARREARAGES AND NON-CONFORMING PAYMENTS

Husband contends that even if a court order was required to reduce the child support, he nevertheless is entitled to credit as against his child and spousal support arrearages for sums he paid to and on behalf of wife and the children beyond those required by the agreement. Alternatively, he contends wife has "unclean hands" because she agreed to the reduction of support in 1998 and accepted payment of significant non-support sums after that time.  He also contends that awarding the arrearages wife seeks will unjustly enrich her and that any sums awarded should be distributed instead to the emancipated children.  Under settled principles applied to the facts of this case, we affirm the trial court's decision refusing husband's request for credit for these non-conforming payments.

Unless an agreement incorporated into a decree involves a child or spousal support modification provision that is self-executing, see Code § 20-109.1,

> "it is the obligation of the divorced husband to pay the specified amounts according to the terms of the decree[,] and . . . he should not be permitted to vary these terms to suit his convenience. . . . [When circumstances change, to] warrant a change in the terms of the decree . . . [, in the absence of a self-executing provision, the husband's] remedy is to apply to the court for such relief.  To permit him to increase the amount of the specified payments at one time, reduce them at another, and require an adjustment of the differences in the future, would lead to continuous trouble and turmoil. . . .  To allow the husband credit for these overpayments would be to deprive the [recipient] of the future benefit of the amount of support money which the lower court has found was proper and has ordered to be paid."

Sanford v. Sanford, 19 Va. App. 241, 246, 450 S.E.2d 185, 188 (1994) (quoting Newton v. Newton, 202 Va. 515, 519, 118 S.E.2d 656, 659 (1961)).  This rule prohibiting credit for

non-conforming support payments applies to awards of child support and awards of spousal support. Id.

"'Typically, two conditions must exist before credits will be given for non-conforming payments: (1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse affect on the support award.'" Gallagher v. Gallagher, 35 Va. App. 470, 476, 546 S.E.2d 222, 225 (2001) (en banc) (quoting Wilderman v. Wilderman, 25 Va. App. 500, 506, 489 S.E.2d 701, 705 (1997)). If these conditions are not met, "'support payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities.'" Buxbaum v. Buxbaum, 20 Va. App. 181, 186, 455 S.E.2d 752, 755 (1995) (quoting Sanford, 19 Va. App. at 248, 450 S.E.2d at 190). Similarly, in the absence of an express agreement approved by a court, payments to "'third-party vendors' for things such as 'day care, doctor visits [and] food'" may not constitute non-conforming child support payments for which the payor spouse is entitled to receive credit. Gallagher, 35 Va. App. at 479 & n.1, 546 S.E.2d at 226 & n.1.

Here, no evidence establishes that the parties entered into an agreement to "modify the terms or method of payment." Husband testified, for example, that, "In 1994, these are all the checks that I wrote to [wife] Linda. Linda needed money, she asked for money, I gave her money, *assuming* that I would get credit on *something* at a later date." (Emphases added). Wife confirmed that husband never "talk[ed] to [her] at any time with regard to any type of credit or loan to [her] with regard to any of those payments."

Husband nevertheless contends that this case presents "unique facts" like those in Acree v. Acree, 2 Va. App. 151, 342 S.E.2d 68 (1986), in which we created a narrow exception to the general rule denying credit for non-conforming payments. In Acree, by agreement between the parties, one of three children subject to a child support award payable to the mother went to live

- 8 -

permanently with the father and resided with him and was fully supported by him until she was emancipated. Id. at 153, 342 S.E.2d at 69. Also by undisputed agreement of the parties, the father suspended payment to the mother of support for the child whose permanent custody he had assumed. Id. After the child was emancipated, mother sought payment of support arrearages for the child. Id.

We reversed the trial court's order granting that request, reasoning as follows:

> Where . . . the custodial parent has by his or her own volition entered into an agreement to relinquish custody on a *permanent* basis and has further agreed to the elimination of support payments and *such agreement has been fully performed*, we hold that the purpose to be served by application of an inflexible rule denying credit for nonconforming payments is outweighed by the equities involved. . . .
>
> . . . *In assuming physical custody and total responsibility for the support of the child, the husband fulfilled his obligation under the decree.* He did not stop support payments unilaterally to suit his convenience.

Id. at 157-58, 342 S.E.2d at 71-72 (citations omitted) (second emphasis added).

In appellant's case, by contrast, husband did not fulfill his obligation under the decree by "assuming physical custody and total responsibility for the child" or children. Each of the children continued to live with wife until his or her emancipation. Although husband continued to pay some of the unemancipated children's expenses and wife admitted the children "were well taken care of," wife denied that husband paid for "lots of things" after he reduced his child support payments in 1998. When wife was asked if "the children ever want[ed] for anything" after husband unilaterally reduced child support in 1998, she testified, "Well, we just went to him if there was a problem" and "[i]f he thought that it was . . . a good reason, he would pay for it." The evidence showed that Louis and Cristin had chiropractic treatment following husband's 1998 reduction in child support, and wife testified that she paid every chiropractic bill for them "because [husband] is against [it]." She testified that she also paid "every single one of the

- 9 -

children's therapy bills and all of [their] family counseling bills," although the record does not make clear when these costs were incurred. Finally wife testified that she purchased an interest in a vacation property using her spousal support money and gifts from her parents so that she could "provide the kids with vacations." Because husband did not "assum[e] physical custody and total responsibility for the support of the [unemancipated] child[ren]," as did the father in <u>Acree</u>, 2 Va. App. at 158, 342 S.E.2d at 72, he did not fulfill his obligation under the decree and he was not entitled to credit for non-conforming payments under <u>Acree</u>.

Finally, we reject husband's contention that wife was barred by the equitable doctrine of unclean hands or unjust enrichment from recovering the child and spousal support arrearages. Husband claims wife has unclean hands because she agreed orally in 1998 that husband was entitled to reduce child support based on the emancipation of three of the five children and because she accepted the excessive payments of other sums of money during that time. Wife testified, however, that she "was against" the 1998 reduction in support, and it is uncontroverted that husband did not seek judicial modification of the child support award at that time. Further, the agreement specifically provides that "[n]either *laches* nor unwritten acquiescence shall be a defense so as to reduce or bar recovery of any arrearages of spousal or child support." Although wife agreed in a letter in 2001 that husband was entitled to a reduction in child support effective June 1, 2001, her letter clearly indicated her belief that an order was required to reduce husband's child support obligation, and it is uncontroverted that husband never sought such an order. Finally, husband does not contend that wife ever agreed to accept these other payments in satisfaction of the child or spousal support obligation. Thus, the evidence, viewed in the light most favorable to wife, supports a finding that wife did not have unclean hands.

Similarly, we reject husband's claim that unjust enrichment should bar wife's recovery. We held in <u>Gallagher</u>, a case arguably involving more egregious facts than those here, that the

"[m]other's unjust enrichment [was] an unfortunate by-product of our decision but that, standing alone, [it did] not compel a different result." 35 Va. App. at 478, 546 S.E.2d at 226. In Gallagher, although the wife agreed in writing to the change in support and the husband fulfilled his obligations under the amended agreement, we held the wife was still entitled to the child support arrearages due under the original agreement and that husband was not entitled to credit under the original agreement for non-conforming payments he made pursuant to the amended agreement. Id. at 474-75, 478-79, 546 S.E.2d at 224, 226. We held that the mother's unjust enrichment on those facts did not compel a different result. Id. at 478, 546 S.E.2d at 226. Here, unlike in Gallagher, wife did not agree to the reduction in child support and did not agree to accept non-conforming payments in lieu of the child support obligation. Further, the evidence established that wife expended some of her own funds, obtained either from spousal support monies or gifts from her parents, to pay sums for the children that included chiropractic treatment and vacation expenses. To the extent mother is unjustly enriched by the award of child support arrearages following the emancipation of her children, we hold, as we did in Gallagher, that this fact may be "an unfortunate by-product of our decision but, standing alone, does not compel a different result." Id.

## C. UTILITY PAYMENTS

The parties' agreement provided as follows with respect to the utilities for the marital residence: "Until the marital home is conveyed to Wife on the earlier of [two dates set forth in the agreement], Husband shall pay for . . . (iii) all monthly utilities, such as electricity, telephone, cable t.v., and water, up to $610 per month for such utilities." The evidence established that most of the utilities remained in husband's name until 2001. The bills for all listed utilities were sent directly to husband's business, and the business' comptroller paid them in full, even when they exceeded the monthly sum of $610. Wife testified that, until husband had those utilities cut

- 11 -

off in 2001, she was unaware that the bills exceeded the contractual obligation of $610 per month.

Husband contends the provision of the parties' agreement regarding the payment of utilities is ambiguous and that he is entitled to credit for all sums he paid toward utilities for the marital residence in excess of the amount of $610 per month. We disagree. The clear language of the agreement provides that husband is to pay the listed "monthly utilities" on a monthly basis. Thus, any utility payments husband made in excess of $610 per month were not payments made pursuant to the agreement, and they are non-conforming payments for which he is not entitled to credit.

### D. MONIES FOR REPAIRS AND MAINTENANCE OF MARITAL RESIDENCE

The agreement provided as follows with respect to repairs and maintenance for the marital residence:

> The parties jointly own the marital home known generally as 1009 Windsor Road, Virginia Beach, VA 23241.
>
> The marital home shall be conveyed by the parties, by deed of general warranty and English covenants of title, to Wife on December 25, 2010, or 7 years after Wife's remarriage, whichever first occurs. Husband shall assume all mortgages, including principal and interest and other liens thereon and timely pay the same as they mature and indemnify and hold Wife harmless from all loss on account thereof. Until the marital home is conveyed to Wife on the earlier of those two dates, husband shall pay for all (i) hazard insurance, real estate taxes on the marital home, and (ii) all repairs, maintenance, renovation and replacements on the marital home unless caused by Wife's wilful act, omission or neglect, and (iii) all monthly utilities, such as electricity, telephone, cable t.v., and water, up to $610 per month for such utilities.

In addition to claiming an entitlement to credit for other payments as against monies due for maintenance and repairs, husband contends the provision requiring him to pay for all repairs, maintenance, and renovations to the marital home does not include the yard and pool. We hold the plain language of the agreement provides to the contrary.

"Where [an] agreement is unambiguous, its meaning and effect are questions of law to be determined by the court and the same rules of interpretation applicable to contracts generally apply to these agreements." Henderlite, 3 Va. App. at 541, 351 S.E.2d at 913.

> "The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties."

Tiffany, 1 Va. App. at 16, 332 S.E.2d at 799 (quoting Berry, 225 Va. at 208, 300 S.E.2d at 796).

The clause requiring husband to pay for maintenance on "the marital home" is contained in the paragraph providing for the eventual transfer to wife of "the marital home known generally as 1009 Windsor Road." The agreement clearly contemplates that the building, pool, and surrounding grounds comprising 1009 Windsor Road constitute "the marital home" that will be conveyed to wife. The agreement uses the same language, "the marital home," to set out the premises upon which husband is obligated for "all repairs, maintenance, renovation and replacement." Thus, the language unambiguously requires husband to pay for maintenance and repairs to the yard and pool located at 1009 Windsor Road.

Husband also contends the agreement does not obligate him to pay in the absence of "direct evidence that these repairs were necessary to maintain the house." We hold the record contained direct evidence, in the form of wife's testimony, supporting a finding that the repairs were, in fact, necessary to maintain the house.

Finally, husband contends the agreement did not obligate him to pay unless wife proved "that [the need for these repairs was] not caused by the negligence of [wife]." The agreement expressly provides that "husband shall pay for . . . all repairs, maintenance, renovation and replacements on the marital home *unless* caused by Wife's wilful act, omission or neglect." (Emphasis added). Under the express language of the agreement, we hold that if husband

- 13 -

contended the need for such repairs was "caused by Wife's wilful act, omission or neglect," husband, rather than wife, bore the burden of proving that act, omission or neglect.

Even if wife bore this burden, the record contains evidence from which the chancellor could have concluded she satisfied that burden. As outlined above, wife testified about each expense to which husband objected. Her testimony indicated she sought to maintain the property to preserve the parties' investment and gave no indication that the need for any of the challenged work resulted from her willful act, omission or neglect. This evidence would have supported a finding that the repairs were not necessitated by any act or omission of wife's.

### E. WIFE'S INHERITANCE

The parties' agreement provides that each shall retain monies they inherited during the marriage. Wife contended that she inherited $5,656.82 from her grandmother in 1983 and that she gave the money to husband to invest, and the court ruled wife was entitled to the return of that money. Husband contends the trial court erred in ruling that he was obligated to return the alleged funds to wife and that her remedy, if any, was against the corporation in which she alleged husband invested those funds. We disagree and affirm the trial court's ruling.

The evidence, although disputed, permitted a finding that wife received said sum in 1983 and that she gave it to husband, who added enough of his own money to invest the total sum of $8,000. Wife offered into evidence a letter from husband claiming that he invested his own money in the company for her and indicating that he would repay her for the inheritance if she could provide "some documentation that this money came from [her]." Wife testified about her receipt of the gift and offered into evidence a letter from her father confirming her receipt of such a gift. Wife also produced a copy of an entry in the ledger for the parties' joint bank account showing a deposit of "Linda's gift" of $5,656.82 and the immediately subsequent entry showing a check for $8,000 was written to Naxos, Inc., the corporation at issue. Wife received a

- 14 -

1099 form from Naxos Inc. for the year 1983 indicating her receipt of $265.42 in interest. Additional evidence permitted a finding that husband, along with other members of his family, owned the company and that he was its president. This evidence supported the trial court's ruling requiring husband to reimburse wife for the $5,656.82 inheritance he invested for her.

## F. EDUCATION FUND FOR YOUNGEST CHILD

The agreement required husband to place $100 in a fund for each of the five children on a weekly basis until each child graduated from high school, each fund to be used "only for that child primarily for education." It is undisputed that husband did not fully fund such accounts for any of the parties' children. At the time of these proceedings, four of the parties' children had graduated from high school and those who so desired had obtained college educations funded by husband's parents. At the time of these proceedings, however, the parties' youngest child, Cristin, had just graduated from high school. Husband alleged that an educational account existed for Cristin, but he conceded that the account did not contain the amount of money it would have contained if he had paid into it in accordance with the terms of the parties' agreement. However, he contended that he would pay for Cristin's education. The trial court concluded husband violated the agreement, and the undisputed evidence supports that finding.

## G. ATTORNEY'S FEES AND COSTS

The parties' agreement provides that "If a party shall seek to modify or abrogate any of the terms of this agreement and shall be unsuccessful, that party shall be responsible for the payment of the reasonable attorney's fees and costs of the other party."

Here, husband sought to abrogate the terms of the parties' agreement by unilaterally (1) reducing and then terminating his child and spousal support obligations and other payments due under the agreement and (2) failing to maintain an educational account for the parties' child, Cristin. The court's decisions holding husband responsible for the support arrearages and

various other amounts due under the agreement and holding him in contempt for failing to maintain the educational account, which we affirm on appeal, constitute a finding that husband's attempt to abrogate the terms of the agreement was unsuccessful. Thus, wife is entitled to an award of attorney's fees and costs under the express terms of the parties' agreement, and we affirm the trial court's award. For the same reason, we grant wife's request for an award of fees and costs incurred on appeal and remand to the trial court for a determination of the amount of those fees and costs.

## III.

In summary, we hold the provision of the settlement agreement regarding terminating child support for each child who reached the age of majority was not a self-executing provision and that husband was not entitled to reduce his support payments without seeking entry of a proper order. We hold further that husband was not entitled to credit for overpayments made under the settlement agreement and other gratuitous payments to wife for the benefit of her and the children. Next, we conclude the trial court did not err in holding husband responsible pursuant to the agreement for certain maintenance expenses for the marital residence and in requiring husband to return to wife the inheritance money he invested for her in a business owned by him and his family. Further, we hold the evidence established husband was in breach of a provision requiring him to deposit certain sums into an educational account for the parties' youngest child. Finally, we hold the evidence supported a finding that wife was entitled to an award of attorney's fees under the terms of the parties' agreement. Thus, we affirm the trial court's ruling. We also grant wife's request for an award of attorney's fees and costs incurred in this appeal and remand to the trial court for a determination of the amount of those fees and costs.

<u>Affirmed and remanded with instructions.</u>